STATE OF NORTH CAROLINA v. HEATH BARTON

No. 173A93

(Filed 4 March 1994)

## 1. Constitutional Law § 189 (NCI4th)— armed robbery and larceny—separate takings—no double jeopardy

Although larceny is a lesser-included offense of armed robbery, separate convictions of defendant for armed robbery and larceny of a firearm did not violate defendant's right to be free of double jeopardy for the same offense because the armed robbery and the larceny involved separate takings where the victim's wallet and automobile were taken in the armed robbery and the firearm was later taken from the victim's automobile.

**Am Jur 2d, Criminal Law § 279.**

## 2. Criminal Law § 793 (NCI4th)— acting in concert—absence of specific intent instruction—no plain error

Any error in the trial court's instructions on acting in concert which allegedly permitted the jury to convict defendant of the crimes of first-degree murder under the felony murder theory, armed robbery, and larceny of a firearm without finding that he possessed the specific intent to commit the particular crime did not amount to plain error where the trial court expressly told the jury in its instructions on each of the crimes charged that it could convict defendant only if it found that he himself acted, alone or with others, to commit the crime in question and shared a common purpose with others to commit that crime.

**Am Jur 2d, Trial §§ 1251, 1255 et seq.**

## 3. Evidence and Witnesses § 694 (NCI4th)— exclusion of evidence—offer of proof

Defendant failed to preserve for appellate review any issue concerning the exclusion of testimony where he made no offer of proof regarding his proffered testimony and the significance of the excluded testimony is not obvious from the record.

**Am Jur 2d, Appeal and Error § 644.**

4. **Criminal Law § 1218 (NCI4th)— mitigating factor—passive participant—contradictory evidence—finding not required**

The trial court did not err by failing to find as a mitigating factor for larceny of a firearm that defendant was a passive participant or played a minor role in the commission of the offense within the meaning of N.C.G.S. § 15A-1340.4(a)(2)(c), even though the evidence tended to show that defendant never personally handled the pistol taken from the victim's car and defendant presented evidence that he was present in the car only because another participant had slapped him, where there was other evidence tending to show that defendant played an active role in planning and preparing for the murder and robbery of the victim; defendant was present when the murder took place and thereafter robbed the victim of his wallet; defendant actively assisted his accomplices in their efforts to conceal the body; while riding in the car from which the victim's pistol was stolen, defendant did nothing to discourage his accomplices from taking the pistol and did nothing to counteract the ultimate effect of their actions; and defendant told officers that he would do the same thing again and indicated his pleasure with the results of his criminal activity.

**Am Jur 2d, Criminal Law §§ 598, 599.**

5. **Criminal Law § 1234 (NCI4th)— mitigating factor—immaturity reducing culpability—finding not required**

The evidence did not require the trial court to find as a statutory mitigating factor for larceny of a firearm that defendant's immaturity significantly reduced his culpability where defendant showed that he was only sixteen years old at the time of the crime, but defendant introduced no evidence tending to show that his age reduced his culpability other than his conclusory assertion on appeal that his cooperation was influenced or coerced by his brother's actions. N.C.G.S. § 15A-1340.4(a)(2)(e).

**Am Jur 2d, Criminal Law §§ 598, 599.**

6. **Criminal Law § 1233 (NCI4th)— mitigating factor—limited mental capacity reducing culpability—finding not required**

The evidence did not require the trial court to find as a statutory mitigating factor for larceny of a firearm that defendant's limited mental capacity significantly reduced his

**STATE v. BARTON**

[335 N.C. 741 (1994)]

culpability where the evidence was uncontradicted that defendant's I.Q. test scores placed him in the range of "mild mental retardation," but it was not uncontradicted with regard to whether his limited mental capacity reduced his culpability in that the evidence tending to show defendant's vulnerability to coercion consisted solely of defendant's self-serving assertions that his brother and another accomplice forced him to participate in the murder and armed robbery of the victim and larceny of the victim's pistol, and evidence that defendant's limited mental capacity reduced his culpability was contradicted by evidence that defendant was present at a prior attempt to kill and rob the victim, was present when an accomplice procured the murder weapon, and actively participated in efforts to conceal the crimes.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment entered by Read, J., on 16 November 1992, in the Superior Court, Robeson County, sentencing the defendant to life imprisonment for first-degree murder. The defendant's motion to bypass the Court of Appeals as to an additional judgment for larceny of a firearm allowed by the Supreme Court on 19 May 1993. Heard in the Supreme Court on 7 December 1993.

*Michael F. Easley, Attorney General, by Michael S. Fox, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, and Constance H. Everhart, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

On 20 May 1991, a Robeson County Grand Jury indicted the defendant, Heath Barton, for first-degree murder, robbery with a dangerous weapon, larceny of a firearm and felonious larceny of an automobile. The defendant, who was sixteen years of age at the time of these crimes, was tried noncapitally at the 9 November 1992 Criminal Session of Superior Court, Robeson County. At the conclusion of the State's evidence, the trial court dismissed the charge of larceny of an automobile. The jury returned verdicts finding the defendant guilty of first-degree murder under the theory of felony murder, robbery with a dangerous weapon and larceny

of a firearm. The trial court sentenced the defendant to life imprisonment for the first-degree murder conviction and arrested judgment on the underlying conviction for robbery with a dangerous weapon. The trial court also sentenced the defendant to seven years imprisonment for the larceny of a firearm conviction, to be served consecutive to the life sentence. The defendant appealed to this Court as a matter of right from the judgment sentencing him to life imprisonment for first-degree murder. *See* N.C.G.S. § 7A-27(a) (1989). We allowed his motion to bypass the Court of Appeals on his appeal from the additional judgment for larceny of a firearm.

The evidence presented at the defendant's trial tended to show the following. Around 6:00 p.m. on 8 February 1991, the defendant's brother, Herbert Barton, Jr., shot Harold Craven in the back of the head with a shotgun. The defendant later explained that the killing was done "for the fun of it" and to procure money for drugs. It was Mr. Craven's custom in the evenings to drive to an area of Maxton, North Carolina, where several garbage dumpsters and a couch were located in order to smoke and "get out of [his wife's] hair." The defendant, Herbert and a third accomplice, Michael Emanuel, had seen Mr. Craven at the dumpsters two nights prior to the murder and had attempted to kill him then, but the shotgun Herbert was using failed to fire. On the morning of 8 February 1991, the defendant and Michael Emanuel went to the home of "a man named Orson" to procure another shotgun. Emanuel entered Orson's home through a window and emerged with a 20-gauge shotgun. They rejoined Herbert and returned to the dumpsters with the new shotgun later that evening, where they were waiting for Mr. Craven when he arrived. Herbert shot Mr. Craven as soon as the latter got out of his car. When Mr. Craven fell to the ground, Emanuel and the defendant moved forward and took his wallet. The defendant then picked up the victim's coat while Emanuel and Herbert dragged the victim's body into a wooded area behind the dumpsters. The three of them covered the body with leaves and brush and then left in the victim's car, with Herbert driving.

While in the car, Emanuel removed a .25-caliber pistol from the glove compartment and gave it to Herbert. Emanuel also took around $700 in cash from the stolen wallet. Herbert subsequently parked the car in a patch of woods three to four miles from the mobile home where he and the defendant lived with their parents. The defendant threw the car keys farther into the woods, while

Herbert and Emanuel swept the ground near the car. The three of them walked to the mobile home and then went to buy beer, marijuana, cocaine and knives with the money stolen from the victim's wallet. After making their purchases, they tossed the murder weapon into a ditch behind the mobile home and hid their shoes underneath the mobile home.

Local sheriff's deputies arrested Herbert, Emanuel and the defendant two days later. After twice receiving the Miranda warnings and executing a written waiver of constitutional rights, the defendant confessed to the facts set out above. He also told the deputies that if he had to do it all over again, he would do the same thing again.

The defendant testified at trial, however, that he had told Herbert and Michael Emanuel that he "wasn't going to have nothing to do" with shooting Mr. Craven, but that Herbert and Emanuel had forced him to participate in the crimes. He further testified that he did not arrive at the murder scene until after Herbert had shot the victim, that he got into the victim's car only because Herbert slapped him and that he threw the car keys away on instructions from Herbert. He also testified that he had made his statement to law enforcement officers only after a detective had threatened him with "the electric chair." He further claimed that the officers had fabricated the entire confession. He subsequently admitted, however, that portions of the confession described by the officers were true.

Other pertinent facts will be introduced in the discussion of the assignment of error to which they are relevant.

[1] By his first assignment of error, the defendant maintains that the trial court erred in denying his motions to dismiss or arrest judgment on the charge of larceny of a firearm. The defendant contends that larceny is a lesser included offense of robbery with a dangerous weapon. *See State v. White*, 322 N.C. 506, 514, 369 S.E.2d 813, 817 (1988). He further argues that since the robbery with a dangerous weapon and larceny of a firearm in the present case were part of a single continuous criminal transaction, the trial court violated his federal and state constitutional rights to be free of double jeopardy for the same offense by sentencing him for both larceny of a firearm and felony murder with the underlying felony being robbery with a dangerous weapon. We disagree.

**STATE v. BARTON**

[335 N.C. 741 (1994)]

In *White*, we explained that although larceny is a lesser included offense of robbery with a dangerous weapon, convictions of a defendant for *both* armed robbery and larceny may be upheld so long as the larceny and the armed robbery "involved two separate takings." *Id.* at 517, 369 S.E.2d at 818. Here, the defendant and his accomplices shot the victim, took his wallet from his body and fled the murder scene in the victim's automobile. They later removed a firearm belonging to the victim from the glove compartment of the automobile taken during the murder and armed robbery. Applying the analysis of *White*, we conclude that the separate convictions for robbery with a dangerous weapon and larceny of a firearm in the present case survive the defendant's challenge on double jeopardy grounds because the armed robbery and the larceny involved separate takings.

The defendant, however, directs our attention to *State v. Adams*, 331 N.C. 317, 416 S.E.2d 380 (1992), in which this Court held that it was improper to sentence the defendant for both larceny of a firearm and felonious larceny pursuant to a breaking or entering, where the defendant and his accomplices had stolen satellite equipment, coins and a firearm during the course of a single breaking and entering. *Id.* at 332-33, 416 S.E.2d at 388-89. We therefore vacated the defendant's sentence for felonious larceny pursuant to a breaking or entering. *Id.* at 333, 416 S.E.2d at 389.

*Adams* does not alter our conclusion. We held in *Adams* that the defendant "was improperly convicted and sentenced for both larceny of a firearm and felonious larceny *of that same firearm* pursuant to a breaking or entering." *Id.* (emphasis added). The two convictions at issue in *Adams* thus did not involve separate takings, but rather involved the same taking of the same firearm. *Adams* is easily distinguishable from the present case, where the armed robbery of the victim — resulting in the taking of his wallet and automobile — and the subsequent larceny of the victim's firearm from his automobile constituted separate takings for double jeopardy purposes. Accordingly, we conclude that this assignment of error is without merit.

[2] The defendant argues by his second assignment of error that the trial court committed reversible error in its instructions on acting in concert. As the defendant recognizes, however, he did not object to the instructions given by the trial court or request additional instructions. Therefore, this assignment of error is barred

by Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure, and the defendant is not entitled to relief unless any error in this regard constituted plain error. *State v. Odom*, 307 N.C. 655, 659-60, 300 S.E.2d 375, 378 (1983). Accordingly, our review is limited to a review for plain error. To amount to error so serious as to be "plain error," an error in the trial court's instructions must be clearly "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993). In other words, the error must be one "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988). We find no such error here.

In the present case, the jury found the defendant guilty of first-degree murder solely on the felony murder theory. The jury also found the defendant guilty of robbery with a dangerous weapon and guilty of felonious larceny of a firearm. The defendant contends that as to each of those crimes, the instructions of the trial court on the doctrine of acting in concert permitted the jury to convict the defendant without finding that he possessed the specific intent to commit the particular crime in question. We do not believe that the trial court committed "plain error" as we have previously defined that term.

At points in its instructions on each of the crimes charged, the trial court expressly told the jury that it could convict the defendant only if it found that he himself acted, alone or with the others, to commit the crime in question and shared a common purpose with the others to commit that crime. For example, in instructing the jury with regard to the crime of felonious larceny of a firearm, the trial court gave, *inter alia*, the following instructions:

> [F]or a person to be guilty of a crime, it's not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons act together with a *common purpose to commit felonious larceny of a firearm*, each of them is held responsible for the acts of the others done in the commission of felonious larceny of a firearm.

. . . .

So, ladies and gentlemen, I charge you in case 91 CRS 3029 that if you find from the evidence beyond a reasonable doubt that on or about the alleged date, *the defendant*, acting either by himself or acting together with Herbert Barton or Michael Emanuel, *took and carried away* Harold Craven's firearm without his consent, knowing that he was not entitled to take it and intending at the time to deprive Harold Craven of its use permanently, it would be your duty to return a verdict of guilty of felonious larceny of a firearm.

(Emphasis added). The trial court likewise gave similar instructions as to the other crimes charged. Such instructions are consistent with the North Carolina Pattern Jury Instructions. *See* N.C.P.I.— Crim. 202.10 (1971). Those instructions must have been understood by the jury to allow conviction of the defendant for each of the crimes charged if the defendant *himself acted*, alone or with others, to commit that particular crime and intended that it be committed.

We conclude that in light of portions of the instructions such as those quoted above, the alleged errors in the trial court's instructions could not have improperly "tilted the scales" and caused the jury to reach its verdict convicting the defendant. *State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 806-807 (1983). Therefore we conclude that any error in the portions of the trial court's instructions on acting in concert complained of in the present case did not amount to plain error, and we overrule this assignment of error.

[3] By his third assignment of error, the defendant contends that the trial court erred in sustaining objections by the State and, thereby, excluding testimony of the defendant regarding statements made to him by Herbert Barton, Jr., and Michael Emanuel. The defendant contends that this testimony would have tended to show that he was an unwilling participant in the crimes at issue here. The defendant speculates that the trial court sustained the State's objections to this testimony on hearsay grounds. The defendant maintains that these rulings were improper because he did not intend to introduce the statements to prove the truth of the matter asserted, but merely to demonstrate that the statements were made. The defendant further insists that the trial court's action constituted prejudicial error entitling him to a new trial because the excluded testimony "went to the most crucial feature of this case"—his defense of coercion and duress.

In order to preserve the exclusion of evidence for appellate review, "the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985); *see also* N.C.G.S. § 8C-1, Rule 103(a)(2) (1992). The reason for such a rule is that "the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred." *Simpson*, 314 N.C. at 370, 334 S.E.2d at 60. In the absence of an adequate offer of proof, "[w]e can only speculate as to what the witness' answer would have been." *State v. King*, 326 N.C. 662, 674, 392 S.E.2d 609, 617 (1990). In the present case, the defendant made no offer of proof regarding his proffered testimony and the significance of the excluded testimony is not obvious from the record. The defendant therefore failed to preserve any issue concerning the exclusion of this testimony for appellate review. *Simpson*, 314 N.C. at 370, 334 S.E.2d at 60; *see also State v. Hill*, 331 N.C. 387, 409-10, 417 S.E.2d 765, 775-76 (1992), *cert. denied*, --- U.S. ---, 122 L. Ed. 2d 684, *reh'g denied*, --- U.S. ---, 123 L. Ed. 2d 503 (1993); *King*, 326 N.C. at 674, 392 S.E.2d at 617. Accordingly, this assignment of error is overruled.

By his fourth and final assignment of error, the defendant argues that the trial court erred in sentencing him for the larceny of a firearm conviction pursuant to the Fair Sentencing Act. Specifically, he argues that the trial court erred by failing to find the following two statutory mitigating factors: (1) that "[t]he defendant was a passive participant or played a minor role in the commission of the offense" within the meaning of N.C.G.S. § 15A-1340.4(a)(2)(c), and (2) that "[t]he defendant's immaturity or his limited mental capacity at the time of commission of the offense significantly reduced his culpability for the offense" within the meaning of N.C.G.S. § 15A-1340.4(a)(2)(e). The defendant insists that both of these mitigating factors were supported by the evidence and therefore, by failing to find them, the trial court committed error entitling the defendant to a new sentencing proceeding for the larceny of a firearm conviction. We disagree.

Under the Fair Sentencing Act, the defendant has the burden of proving the existence of a mitigating factor by a preponderance of the evidence. *State v. Jones*, 327 N.C. 439, 453, 396 S.E.2d 309, 317 (1990). The trial court's "failure . . . to find a factor in mitigation urged by the defendant will not be overturned on appeal unless

the evidence in support of the factor is uncontradicted, substantial, and there is no reason to doubt its credibility." *State v. Lane*, 77 N.C. App. 741, 745, 336 S.E.2d 410, 412 (1985); *see also State v. Jones*, 309 N.C. 214, 219-20, 306 S.E.2d 451, 455 (1983) ("[W]hen a defendant argues . . . that the trial court erred in failing to find a mitigating factor proved by uncontradicted evidence, . . . [h]e is asking the court to conclude that 'the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn,' and that the credibility of the evidence 'is manifest as a matter of law.'"). Further, the trial court is "permitted wide latitude in arriving at the truth" as to the existence of aggravating and mitigating factors. *State v. Ahearn*, 307 N.C. 584, 596, 300 S.E.2d 689, 697 (1983). The evidence supporting the two mitigating factors at issue here was not uncontradicted. Therefore we must conclude that the trial court's refusal to find these mitigating factors was not error.

[4] With regard to the first mitigating factor at issue, involving the extent of the defendant's participation, there was evidence clearly tending to show that the defendant was more than a passive participant in the theft of the firearm from the victim's automobile. We recognize that the evidence tended to show that it was Michael Emanuel who actually removed the .25 caliber pistol and that the defendant never personally handled it. We also recognize that the defendant introduced evidence that he was present in the victim's car only because Herbert had slapped him. Other evidence tended to show, however, that the defendant played an active role in the earlier stages of the crimes. The defendant accompanied Herbert and Emanuel during the first attempt to kill and rob the victim, he was present when Michael Emanuel procured the murder weapon, he was present when the murder took place and he was aware from the beginning that Herbert and Emanuel were contemplating robbery. Following the murder, the defendant robbed the victim of his wallet and actively assisted Herbert and Emanuel in their efforts to conceal the victim's body. While riding in the car from which the victim's pistol was stolen, the defendant did nothing to discourage Herbert or Emanuel from taking the pistol and "did nothing to counteract the ultimate effect of their actions." *See State v. Parker*, 315 N.C. 249, 256, 337 S.E.2d 497, 501 (1985) (in determining that the defendant was more than a passive participant, this Court noted that although the defendant did not anticipate, plan or carry out the victim's murder, he did nothing

to discourage his co-defendants from stabbing the victim and "did nothing to counteract the ultimate effect of their actions"); *cf. Jones,* 309 N.C. at 221, 306 S.E.2d at 456 (trial court erred in failing to find that the defendant was a passive participant where the defendant had not agreed to kill the victim and had implored his co-defendant not to kill the victim). Evidence tended to show that the defendant actively participated in efforts to conceal evidence of all of the crimes he, Herbert and Emanuel had committed. Evidence also tended to show that the defendant stated to law enforcement officers that if he had to do it all over again, he would do the same thing again and indicated his pleasure with the results of his criminal activity. *See Parker,* 315 N.C. at 256, 337 S.E.2d at 501 (in determining that the defendant was more than a passive participant, this Court deemed it important that the defendant was "pleased with the result" of the crime). There was therefore contradictory evidence introduced with regard to whether the defendant was a mere passive participant in the larceny of the firearm from the victim's automobile. The trial court thus did not err in failing to find this mitigating factor.

[5] The second mitigating factor at issue here, involving the defendant's immaturity or limited mental capacity, requires a bipartite showing. The defendant must show not only his immaturity or limited mental capacity, but also that his immaturity or limited mental capacity significantly reduced his culpability. *See State v. Moore,* 317 N.C. 275, 280, 345 S.E.2d 217, 221 (1986). While the defendant was only sixteen years of age at the time of the crimes and his I.Q. test scores place him in the range of "mild mental retardation," there is contradictory evidence with regard to whether the defendant's immaturity and diminished mental capacity significantly reduced his culpability. Initially, we note that "age alone is insufficient to support this factor." *Id.* By its use of the term "immaturity," the General Assembly contemplated an inquiry which is "broader than mere chronological age" and which is "concerned with all facts, features, and traits that indicate a defendant's immaturity and the effect of that immaturity on culpability." *Id.* While the defendant presented evidence of his age at the time of the crimes, he introduced no evidence tending to show that his age reduced his culpability other than his conclusory assertion on appeal that "his cooperation . . . was influenced or coerced by his brother's actions." We therefore conclude that the trial court's failure to find the defendant's immaturity to be a mitigating factor was not error.

[6] Similarly, there was contradictory evidence with regard to whether the defendant's limited mental capacity significantly reduced his culpability. While the evidence may have been uncontradicted that the defendant is a person of limited mental capacity, it was *not* uncontradicted with regard to whether his limited mental capacity reduced his culpability. The evidence tending to show the defendant's vulnerability to coercion consisted solely of the defendant's self-serving assertions that Herbert and Emanuel had forced him to participate in the crimes. The defendant offered no independent evidence to corroborate these assertions. Further, we have previously recognized that evidence of a defendant's participation in the planning stage of a crime and a defendant's attempts to conceal evidence of his participation tend to contradict evidence that a defendant's limited mental capacity reduced his culpability. *See, e.g., State v. Holden,* 321 N.C. 689, 696-97, 365 S.E.2d 626, 630 (1988) (defendant's attempts at "covering her own tracks"); *State v. Smith,* 321 N.C. 290, 292, 362 S.E.2d 159, 160 (1987) (defendant's participation in the planning stage). As we have noted above, the defendant in the case *sub judice* was present at the first attempt to kill and rob the victim, was present when Emanuel procured the murder weapon and actively participated in efforts to conceal evidence of the crimes. We therefore conclude that the trial court did not err by failing to find the defendant's limited mental capacity as a mitigating factor.

In short, the mitigating factors at issue were not supported by uncontradicted evidence. Therefore, the trial court's failure to find those mitigating factors was not error. This assignment of error is without merit.

For the foregoing reasons, we hold that the defendant received a fair trial free of prejudicial error.

NO ERROR.