STATE OF NORTH CAROLINA v. MARCUS REYMOND ROBINSON

No. 411A94

(Filed 3 November 1995)

1. **Homicide § 555 (NCI4th)— first-degree murder—statement that codefendant shot victim—insufficiency to negate premeditation and deliberation—instruction on second-degree murder not required**

Defendant's statement to the police that he handed a sawed-off shotgun to a codefendant just before the killing and did not pull the trigger himself, which the State introduced in his first-degree murder trial, was insufficient to constitute affirmative evidence tending to negate premeditation and deliberation and require the trial court to submit second-degree murder to the jury when considered in light of evidence that defendant carried the shotgun to the scene of the killing; defendant had stated on three occasions before the murder that "he was going to burn him a whitey"; he told a friend the day after the murder that he had robbed a man the night before and shot him in the head; and defendant admitted in his statement that the victim "kept begging

STATE v. ROBINSON

[342 N.C. 74 (1995)]

and pleading for us not to hurt him, because he didn't have any money." In any event, defendant was not prejudiced by the trial court's failure to instruct on second-degree murder where the jury found defendant guilty of first-degree murder on the felony murder theory in addition to the theory of premeditation and deliberation.

**Am Jur 2d, Homicide §§ 41-53, 482-502.**

## 2. Homicide § 497 (NCI4th)— felony murder—redundant instructions—harmless error

To the extent that the trial court's instructions on the elements of felony murder may have required redundant findings by the jury before it rendered a guilty verdict when the trial court instructed that the State must prove that defendant killed the victim with a deadly weapon while committing or attempting to commit robbery with a firearm and that defendant's act was a proximate cause of the victim's death, they amounted to error favorable to defendant or, at worst, harmless error.

**Am Jur 2d, Trial §§ 1080-1084.**

## 3. Homicide § 727 (NCI4th)— first-degree murder—premeditation and deliberation and felony murder—no merger of felony

Where defendant was convicted of first-degree murder based upon both premeditation and deliberation and felony murder, the underlying felony did not merge with the murder conviction, and the trial court did not err by failing to arrest judgment on the underlying felony.

**Am Jur 2d, Homicide §§ 46, 72.**

## 4. Constitutional Law § 189 (NCI4th)— armed robbery and larceny—separate takings—sentences not double jeopardy

The armed robbery of a murder victim and larceny of the victim's automobile were separate takings rather than a continuous taking, and defendant's right against double jeopardy was not violated by sentences for both armed robbery and larceny, where defendant took the victim's wallet after the victim was shot; defendant and a codefendant left the murder scene and went to a park where they divided the money and other contents of the wallet; after throwing the wallet away, they walked around the neigh-

borhood; and they then returned to the victim's automobile and drove it around.

**Am Jur 2d, Criminal Law § 279; Robbery § 2.**

**Supreme Court's views as to application, in state criminal prosecutions, of double jeopardy clause of Federal Constitution's Fifth Amendment. 95 L. Ed. 2d 924.**

5. **Criminal Law § 793 (NCI4th)— acting in concert—premeditated and deliberate murder—instruction omitting specific intent—no plain error**

In a prosecution for first-degree murder on theories of premeditation and deliberation and felony murder, any error in the trial court's instruction on acting in concert which allegedly permitted the jury to convict defendant of premeditated and deliberate murder without finding that he possessed the specific intent to commit the crime if the jury found that defendant and his codefendant acted with a common purpose to commit robbery and the victim was killed did not amount to plain error in light of the court's other instructions.

**Am Jur 2d, Homicide §§ 482-486, 498-501; Trial § 723.**

6. **Criminal Law § 1339 (NCI4th)— aggravating circumstances—engaged in kidnapping and robbery—no improper double counting**

Defendant was not the victim of improper "double counting" by the trial court's submission as aggravating circumstances that the capital felony was committed while defendant was engaged in a robbery and also while defendant was engaged in a kidnapping where the State was not required to rely on precisely the same evidence to establish these two aggravating circumstances. Further, since defendant was convicted of first-degree murder upon both the theory of premeditation and deliberation and the theory of felony murder, submission of the underlying felony as an aggravating circumstance was proper.

**Am Jur 2d, Criminal Law § 598; Homicide § 554.**

7. **Criminal Law § 413 (NCI4th)— capital sentencing—opening and closing arguments**

The trial court did not err by refusing to allow defense counsel to open and close final jury arguments in a capital sentencing proceeding since N.C.G.S. § 15A-2000(a)(4) gives a capital

defendant the right to make only the final argument in the penalty phase.

**Am Jur 2d, Trial §§ 495, 496, 514, 549.**

8. **Criminal Law § 1344 (NCI4th)— capital sentencing—especially heinous, atrocious, or cruel aggravating circumstance—sufficiency of evidence**

The evidence in a capital sentencing proceeding was sufficient to show that the murder was physically agonizing or otherwise dehumanizing to the victim so as to support the trial court's submission of the especially heinous, atrocious, or cruel aggravating circumstance to the jury where defendant admitted in his statement to the police that the victim "kept begging and pleading for us not to hurt him," and defendant did not show remorse after the murder but instead robbed the victim of his wallet. N.C.G.S. § 15A-2000(e)(9).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

9. **Criminal Law § 1318 (NCI4th); Homicide § 697 (NCI4th)— capital sentencing—Enmund issue—applicability only to felony murder**

The rule in *Enmund v. Florida*, 458 U.S. 782 (1982), applies only in cases in which defendant was convicted of first-degree murder on the felony murder theory. Therefore, the trial court did not err by failing to require the jury in a capital sentencing proceeding to make a factual determination of defendant's state of mind concerning the murder where the jury convicted defendant of first-degree murder upon the theory of premeditation and deliberation in addition to the felony murder theory.

**Am Jur 2d, Homicide §§ 552 et seq.; Trial § 1441.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

**10. Criminal Law § 1373 (NCI4th)— death penalty not dispro-
portionate**

A sentence of death imposed upon defendant for first-degree
murder was not excessive or disproportionate to the penalty
imposed in similar cases, considering both the crime and the
defendant, where defendant was convicted under theories of pre-
meditation and deliberation and felony murder; the jury found as
aggravating circumstances that the murder was especially
heinous, atrocious, or cruel and that it was committed while
defendant was engaged in the commission of or an attempt to
commit armed robbery and first-degree kidnapping; defendant
was twenty-one years old at the time of the murder; defendant
indicated in his statement to the police that he intended to rob
someone the night of the murder; defendant also stated on three
occasions prior to the murder that "he was going to burn him a
whitey"; and defendant made no effort to assist the victim but
took the victim's wallet and car immediately after the victim was
shot.

**Am Jur 2d, Homicide § 556.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judg-
ment imposing a sentence of death entered by Johnson (E. Lynn), J.,
on 5 August 1994, in Superior Court, Cumberland County, upon a jury
verdict of guilty of first-degree murder. Heard in the Supreme Court
11 September 1995.

*Michael F. Easley, Attorney General, by William N. Farrell, Jr.,
Senior Deputy Attorney General, for the State.*

*James R. Parish for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant was tried capitally upon an indictment charging him
with the first-degree murder of Erik Tornblom, first-degree kidnap-
ping, robbery with a dangerous weapon, felonious larceny, posses-
sion of a weapon of mass destruction, and possession of a stolen
vehicle. Defendant pled guilty to all of the charges but the charge of
first-degree murder. Prayer for judgment was continued as to the
charges to which defendant had pled guilty, and defendant was tried
for first-degree murder. The jury returned a verdict finding defendant
guilty of first-degree murder on both the theory of felony murder and
the theory of premeditation and deliberation. Following a separate

**STATE v. ROBINSON**

[342 N.C. 74 (1995)]

capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death. The trial court, as required by law in light of the jury's recommendation, sentenced defendant to death for the first-degree murder. At the conclusion of a sentencing hearing held pursuant to the Fair Sentencing Act, the trial court arrested judgment for the offense of possession of a stolen vehicle and entered judgments sentencing defendant to consecutive terms of imprisonment for the remaining offenses to which he had pled guilty.

Defendant appeals to this Court as a matter of right from the judgment and sentence of death imposed for first-degree murder. We allowed his motion to bypass the Court of Appeals on his appeal of the judgments entered for the other offenses. For the reasons set forth in this opinion, we conclude defendant received a fair trial, free of prejudicial error, and that the sentence of death for first-degree murder is not disproportionate in this case.

The State presented evidence at trial tending to show that on the morning of 21 July 1991, Erik Tornblom did not return home from Chi Chi's restaurant, where he was employed. Tornblom was discovered dead later that day, having died from a gunshot wound to his face. A witness testified at trial that he observed a black male drive Tornblom's gray four-door Honda to the location where it was later recovered, get out of the vehicle and wipe off the steering wheel and door handle. The black male, whom the witness identified as Roderick Williams, was thereafter arrested and named defendant as the person involved with him in the murder of Tornblom.

After initially denying any involvement in the murder, defendant admitted to police that he and Williams had watched Erik Tornblom enter a store. While Tornblom was inside, defendant pulled out a sawed-off shotgun he had concealed in his clothes and handed it to Williams. After Tornblom returned, Williams asked for a ride. As soon as defendant and Williams entered the car, Williams put the gun to the back of Tornblom's neck and forced him to drive in the direction that defendant and Williams demanded. In his statement to police, defendant stated that "[t]he boy kept begging and pleading for us not to hurt him, because he didn't have any money." Williams and defendant directed the victim to a side street, where he was told to lie down. Williams then shot Tornblom in the face. Before leaving the scene, defendant took Tornblom's wallet and split the twenty-seven dollars therein with Williams.

STATE v. ROBINSON

[342 N.C. 74 (1995)]

The State also presented evidence at trial that defendant told his aunt two days prior to the murder that "he was going to burn him a whitey." Defendant repeated this statement three times. Another witness testified that the day after the murder, defendant told the witness that he had robbed a white man the night before and had shot him in the head.

Additional evidence is discussed at other points in this opinion where it is helpful to an understanding of the issues presented.

[1] By an assignment of error, defendant argues that the trial court committed error in refusing to instruct the jury on second-degree murder. Although defendant concedes the State presented sufficient evidence for the trial court to instruct the jury on first-degree murder, he argues that sufficient evidence was introduced tending to negate premeditation and deliberation to require the submission of second-degree murder as a lesser included offense.

Whether the trial court must instruct on second-degree murder when defendant is tried for the greater felony of first-degree murder on the theory of premeditation and deliberation is to be determined by a review of all of the evidence presented at trial. If the evidence is sufficient to fully satisfy the State's burden of proof as to each element of first-degree murder, including premeditation and deliberation, and "there is *no* evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder." *State v. Strickland,* 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *modified on other grounds by State v. Johnson,* 317 N.C. 193, 344 S.E.2d 775 (1986). In other words, defendant must present some affirmative evidence to support a verdict of second-degree murder before the trial court is required to instruct the jury on that lesser included offense. *State v. Hickey,* 317 N.C. 457, 470, 346 S.E.2d 646, 655 (1986).

In the statement he gave to police, defendant maintained that Williams shot Tornblom. Defendant argues that his statement, which the State introduced at trial, sufficiently negated premeditation and deliberation to constitute evidence from which the jury could find him guilty of second-degree murder. We disagree.

The evidence presented at trial did not tend to negate premeditation and deliberation. It tended to show that defendant carried to the scene of the killing the sawed-off shotgun used to murder Tornblom.

Defendant had stated on three occasions before the murder that "he was going to burn him a whitey." He told a friend the day after the murder that he had robbed a man the night before and shot him in the head. In addition, defendant admitted in his statement that Tornblom "kept begging and pleading for us not to hurt him, because he didn't have any money." When considered in light of such evidence, defendant's statement that he handed the gun to Williams just before the killing and did not pull the trigger himself is wholly insufficient to constitute affirmative evidence tending to negate premeditation and deliberation.

Even assuming *arguendo* that defendant did present evidence tending to negate premeditation and deliberation, defendant was not prejudiced by the trial court's failure to instruct on second-degree murder. The jury found defendant guilty of first-degree murder on the felony murder theory in addition to the theory of premeditation and deliberation. Therefore, any error the trial court may have committed in failing to instruct the jury on second-degree murder does not entitle defendant to a new trial. *State v. Phipps*, 331 N.C. 427, 459, 418 S.E.2d 178, 195 (1992). Defendant's assignment of error is without merit.

[2] In his next assignment of error, defendant argues that the trial court erroneously instructed the jury on the elements of felony murder. The trial court read the instruction that defendant contends is error verbatim from the North Carolina Pattern Jury Instructions. *See* N.C.P.I.—Crim. 206.14 (1994). Defendant concedes that he did not object to the instruction at trial. Therefore, our review is limited to a review for plain error. *State v. Odom*, 307 N.C. 655, 659-60, 300 S.E.2d 375, 378 (1983). To constitute plain error, an error in the trial court's instruction must be "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

Defendant specifically complains that in its instructions concerning felony murder, the trial court instructed in pertinent part as follows:

I further charge that for you to find the defendant guilty of first degree murder under the first degree felony murder rule, the State must prove three things beyond a reasonable doubt.

First, that the defendant committed or attempted to commit robbery with a firearm.

. . . .

Second, that while committing or attempting to commit robbery with a firearm the defendant killed the victim with a deadly weapon.

And third, that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred.

Defendant argues in his brief before this Court that the trial court's instructions were erroneous because they

essentially merged the second and third instructions so that they were almost a redundancy. In the second element the jury was asked to find that while committing or attempting to commit the crime of robbery the defendant killed the victim with a deadly weapon. The third element instructed the jury to find that the killing of the victim was the proximate cause of his death. This merger of the essential elements created a redundancy that actually lessened the State's burden of proof.

We do not find defendant's reasoning persuasive in this regard. Instead, we conclude that to the extent the instructions may have erroneously required redundant findings by the jury before it rendered a guilty verdict, they amounted to error favorable to defendant or, at worst, harmless error. Certainly, requiring the jury to find the same fact twice before convicting defendant did not amount to plain error. This assignment of error is without merit.

[3] Defendant also assigns as error the trial court's failure to arrest judgment for either robbery with a dangerous weapon or for first-degree kidnapping. Defendant argues that the crimes here were so "interwoven" that "the robbery with a dangerous weapon became the underlying felony for murder and murder became an elemental crime of kidnapping." Defendant's argument fails, however, because the jury returned a verdict finding him guilty of first-degree murder based on both premeditation and deliberation and the felony murder theory. As we have held on numerous occasions, "where defendant is convicted of first-degree murder based upon both premeditation and deliberation and felony murder, the underlying felony does not merge with the murder conviction and the trial court is free to impose a sentence

STATE v. ROBINSON

[342 N.C. 74 (1995)]

thereon." *State v. Bell*, 338 N.C. 363, 394, 450 S.E.2d 710, 727 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 861 (1995); *see also State v. Rannels*, 333 N.C. 644, 664-65, 430 S.E.2d 254, 265 (1993); *State v. Artis*, 325 N.C. 278, 322-23, 384 S.E.2d 470, 495 (1989), *sentence vacated*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990), *on remand*, 329 N.C. 679, 406 S.E.2d 827 (1991). This assignment of error is without merit.

[4] By another assignment of error, defendant contends the trial court violated his right against double jeopardy by sentencing him for both robbery with a dangerous weapon and felonious larceny. Defendant pled guilty to the armed robbery of Erik Tornblom, by taking his wallet and the contents therein, and to the felonious larceny of Tornblom's automobile. Defendant argues that these events constituted a continuous taking, or a single offense, immediately after the homicide. From this premise, defendant argues that the continuous taking cannot support sentences to both offenses without violating his constitutional right to be free from double jeopardy under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19, 23, and 27 of the North Carolina Constitution. *See State v. White*, 322 N.C. 506, 514, 369 S.E.2d 813, 817 (1988) (holding that larceny is a lesser included offense of armed robbery).

We recently addressed this subject in *State v. Barton*, 335 N.C. 741, 441 S.E.2d 306 (1994), a case with facts similar to the facts presented in the case *sub judice*. In *Barton*, the defendant and his accomplices shot and killed the victim, took his wallet, fled the murder scene in his automobile and subsequently took a firearm from the glove compartment of the car. Defendant was convicted and sentenced for both robbery with a dangerous weapon and larceny of a firearm. Holding that principles of double jeopardy were not violated, we stated that "the armed robbery of the victim—resulting in the taking of his wallet and automobile—and the subsequent larceny of the victim's firearm from his automobile constituted separate takings for double jeopardy purposes." *Id.* at 746, 441 S.E.2d at 309. Defendant argues *Barton* is not dispositive, however, because in that case the taking of the wallet and the automobile formed the basis for the robbery charge, while the larceny charge was supported by the taking of the firearm from the glove compartment.

Even assuming *arguendo* that *Barton* is distinguishable, the larceny of the automobile in the case *sub judice* was a separate, distinct taking from the armed robbery of the victim. In his statement to

police, defendant admitted that after Williams shot the victim, defendant took the victim's wallet. Subsequently, they left the murder scene and went to a park where they divided the money and other contents of the wallet. Defendant stated that after throwing the victim's wallet away, he and Williams saw some girls and walked around the neighborhood. After these intervening events, they returned to the automobile and drove it around. The sequence of these events as described by defendant establishes that the larceny of the automobile and the armed robbery were separate takings. The trial court did not violate double jeopardy principles by sentencing defendant for both crimes. This assignment of error is without merit.

[5] Defendant also assigns as error the trial court's instruction on acting in concert. As defendant concedes, however, he did not object to the instruction given by the trial court or request additional instructions. Therefore, our review is limited to a review for plain error. *State v. Odom*, 307 N.C. 655, 659-60, 300 S.E.2d 375, 378. We find no such error here.

In the instant case, the trial court first instructed the jury on the elements of first-degree murder on the theory of premeditation and deliberation. The trial court then gave instructions on the elements of first-degree murder on the theory of felony murder. Immediately thereafter, the trial court instructed as follows:

> Ladies and gentlemen of the jury, for a person to be guilty of a crime, it is not necessary that he himself do all the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit robbery with a firearm and are actually or constructively present at the time the crime is committed, each of them is held responsible for the acts of the others done in the commission of robbery with a firearm.

Defendant argues that if the jury found defendant and Williams acted with the common purpose to commit robbery and the victim was killed, this instruction erroneously permitted it to convict defendant of premeditated and deliberate murder without finding that he possessed the specific intent to commit the crime. As recently as *State v. Barton*, we analyzed this very argument concerning the same instruction on acting in concert and declined to find "plain error" as we have defined that term. *Barton*, 335 N.C. at 747, 441 S.E.2d at 310. Defendant cites no new authority that gives us reason to revisit our decision in *Barton*. Therefore, we reaffirm our conclusion in *Barton* that any error in the portions of the trial court's instruction on acting

in concert complained of did not amount to plain error. This assignment of error is without merit.

[6] Defendant next contends that his "right to be free from double counting" was violated during his capital sentencing proceeding by the trial court's having submitted as aggravating circumstances both (1) that the capital felony was committed while defendant was engaged in a robbery and (2) that the capital felony was committed while defendant was engaged in a kidnapping. N.C.G.S. § 15A-2000(e)(5) (Supp. 1994). First, we note that the State was not required to rely on precisely the same evidence to establish these two aggravating circumstances. *See State v. Quesinberry*, 319 N.C. 228, 239, 354 S.E.2d 446, 452 (1987). Further, we have held that when a defendant is convicted of first-degree murder upon both the theory of premeditation and deliberation and the theory of felony murder, as in the present case, submission of the underlying felony as an aggravating circumstance is proper. *State v. Gregory*, 340 N.C. 365, 412, 459 S.E.2d 638, 665 (1995); *State v. Jennings*, 333 N.C. 579, 626, 430 S.E.2d 188, 213, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 602 (1993); *State v. Goodman*, 298 N.C. 1, 15, 257 S.E.2d 569, 579 (1979). Defendant simply has failed to demonstrate that he has been the victim of any improper "double counting." This assignment of error is without merit.

[7] In another assignment of error, defendant argues that the trial court erred by refusing to allow defense counsel to open and close final jury arguments in the capital sentencing proceeding. Although the trial court did allow defense counsel to give the last closing argument, defendant contends N.C.G.S. § 84-14 read in conjunction with N.C.G.S. § 15A-2000(a)(4) grants him the option of arguing first and last during closing arguments of his capital sentencing proceeding. This Court considered and rejected the same argument in *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985), and more recently in *State v. Jones*, 339 N.C. 114, 162, 451 S.E.2d 826, 852 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 873 (1995). This assignment of error is overruled.

[8] By another assignment of error, defendant argues the evidence presented at trial was insufficient to warrant the submission of the statutory aggravating circumstance that "the capital felony was especially heinous, atrocious, or cruel." N.C.G.S. § 15A-2000(e)(9). It is well settled that the trial court must consider the evidence in the light most favorable to the State when determining the sufficiency of the

evidence to support this aggravating circumstance. *State v. Quick,* 329 N.C. 1, 31, 405 S.E.2d 179, 197 (1991). The State is entitled to every reasonable inference to be drawn from the evidence; contradictions and discrepancies are for the jury to resolve; and all evidence admitted that is favorable to the State is to be considered. *State v. Gibbs,* 335 N.C. 1, 61, 436 S.E.2d 321, 355-56 (1993), *cert. denied,* ——— U.S. ———, 129 L. Ed. 2d 881 (1994). We recently discussed several of the numerous types of murders which this Court has concluded warrant the submission of the (e)(9) aggravating circumstance. *State v. Lynch,* 340 N.C. 435, 473, 459 S.E.2d 679, 698 (1995). It suffices to note here that among the types of murders which support this aggravating circumstance are murders that are physically agonizing or otherwise dehumanizing to the victim. *Id.*

The evidence presented in the instant case, when considered in the light most favorable to the State, is sufficient to warrant the submission of the "especially heinous, atrocious, or cruel" aggravating circumstance. *See State v. Brown,* 315 N.C. 40, 67, 337 S.E.2d 808, 827-28 (1985), *cert. denied,* 476 U.S. 1164, 90 L. Ed. 2d 333 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Oliver,* 309 N.C. 326, 347, 307 S.E.2d 304, 319 (1983). In his statement to police, defendant admitted that "[t]he boy kept begging and pleading for us not to hurt him, because he didn't have any money." Further, defendant stated that just before the murder,

> Rod[erick Williams] told the boy to lay [sic] down. And I was fixing to go in his pockets to get his wallet. Rod told me to hold up. The white boy was looking up at Rod, because Rod was standing over him. Rod cocked the gun and pulled the trigger, shooting the boy in the face. The white boy jerked when Rod shot him, and the gun fell out of his hand.

> Rod was getting ready to jump in the car to leave, and I told him to hold up and got the wallet from the boy's back right-hand pocket.

In *State v. Oliver,* we concluded that the victim's imploring "please don't shoot me," and the defendant's lack of remorse in the execution of the murder were sufficient to support the submission of the (e)(9) circumstance. *Oliver,* 309 N.C. at 347, 307 S.E.2d at 319. Like the victim in *Oliver* who pleaded for his life, the victim in the instant case "kept begging and pleading for us not to hurt him." Defendant did not show remorse after the murder; instead, he robbed

**STATE v. ROBINSON**

[342 N.C. 74 (1995)]

the victim of his wallet. Further, in *State v. Brown*, the defendant kidnapped the victim and drove her at gunpoint to an isolated area. We noted that the victim's anxiety increased as defendant drove to the secluded site of her murder. *Brown*, 315 N.C. at 67, 337 S.E.2d at 827. Like evidence in *Brown* which gave rise to the inference that the murder was physically agonizing or otherwise dehumanizing to the victim, the evidence here gives rise to a similar inference. Thus, as in *Oliver* and *Brown*, we conclude that the evidence was sufficient to warrant the submission of the (e)(9) circumstance in the present case. This assignment of error is without merit.

**[9]** By another assignment of error, defendant contends the trial court violated *Enmund v. Florida*, 458 U.S. 782, 73 L. Ed. 2d 1140 (1982), by failing to require the jury to make a factual determination of defendant's state of mind concerning the murder. In *Enmund*, the Court held that the Eighth Amendment forbids the imposition of the death penalty on a defendant who aids and abets in the commission of a felony in the course of which a murder is committed by others, when the defendant does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed. *Id.* at 797, 73 L. Ed. 2d at 1151. Thus, an *Enmund* issue only arises when the State proceeds on a felony murder theory.

This Court applied *Enmund* for the first time in *State v. Stokes*, 308 N.C. 634, 304 S.E.2d 184 (1983). In reversing the trial court for its failure to submit an *Enmund* issue, we found no indication as to the theory upon which defendant was convicted of first-degree murder. *Id.* at 651, 304 S.E.2d at 195. We recognized, however, that *Enmund* applies only in cases in which the defendant was convicted of first-degree murder on the felony murder theory. In a footnote in *Stokes*, we speculated by *obiter dictum* as follows:

Judicial economy requires that when first-degree murder is submitted to the jury on more than one theory at the guilt-innocence phase of the trial, the trial judge should submit the issues so as to require the jury to indicate the theory upon which [its] verdict is returned. *See State v. Goodman*, 298 N.C. 1, 257 S.E.2d 569 (1979). This requirement would, in many instances, obviate the necessity of considering the *Enmund* holding at the sentencing phase of a trial. For instance, if accused is convicted of first-degree murder on the theory of premeditated and deliberated murder, the *Enmund* holding would have no application.

*Stokes*, 308 N.C. at 651 n.1, 304 S.E.2d at 195 n.1. Faced with the issue here, we conclude that our theoretical speculation in the footnote to *Stokes* is consistent with *Enmund* and its progeny. Thus, because the jury convicted defendant of first-degree murder upon the theory of premeditation and deliberation in addition to the felony murder theory, no *Enmund* issue arose during defendant's separate capital sentencing proceeding. This assignment of error is without merit.

Defendant raises six additional issues that he concedes have been decided contrary to his position previously by this Court. He raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review of this case. We have carefully considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we overrule these assignments of error.

Having concluded that defendant's trial and separate capital sentencing proceeding were free from prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2). After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

[10] In the present case, defendant was convicted of first-degree murder under theories of premeditation and deliberation and of felony murder. The jury found the aggravating circumstances that the murder was committed while defendant was engaged in the commission of or attempting to commit robbery with a firearm and first-degree kidnapping, N.C.G.S. § 15A-2000(e)(5), and that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). The jury found as mitigating circumstances that (1) defendant had

no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); (2) the age of defendant at the time of the murder, N.C.G.S. § 15A-2000(f)(7); (3) defendant at age three was a victim of Battered Child Syndrome; (4) defendant at age three sustained a head injury; (5) defendant at age three was subjected to substantial physical abuse by his natural father; (6) defendant at approximately age three was subjected to substantial mental abuse by his father; and (7) defendant suffers from one or more behavioral problems and/or mental problems.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895, *reh'g denied*, —— U.S. ——, 129 L. Ed. 2d 924 (1994). We find this case is not substantially similar to any case in which this Court has found the death penalty disproportionate and entered a sentence of life imprisonment. Each of those cases is distinguishable from the present case.

In five of the seven cases in which this Court has found the death penalty disproportionate, the jury did not find the aggravating circumstance that the murder was especially heinous, atrocious, or cruel. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). Because the jury in the present case found this statutory aggravating circumstance to exist, this case is easily distinguishable from those cases.

In the other two cases in which we have found the death penalty disproportionate, the jury did find that the murders were especially heinous, atrocious, or cruel. *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983). While those cases are similar to the present case in this regard, however, both are distinguishable from the present case on other grounds.

In *State v. Stokes*, the defendant was only seventeen years old at the time of the crime and acted with an older co-felon. The evidence did not clearly establish whether defendant or his partner, who received a life sentence, acted as the ringleader. By contrast, defendant here was twenty-one at the time of the murder. In his statement to

police, he indicated that he intended to rob someone the night of the murder. The evidence also tended to show that defendant stated on at least three occasions prior to the murder that "he was going to burn him a whitey." Finally, this case is distinguishable from *Stokes* because the jury in the present case found an additional aggravating circumstance—that defendant committed the murder while engaged in the commission of or attempting to commit robbery with a dangerous weapon and kidnapping.

In *State v. Bondurant,* the defendant shot the victim but then immediately directed the driver to proceed to the emergency room of the hospital. In concluding that the death penalty was disproportionate, we focused on the defendant's immediate attempt to obtain medical assistance for the victim and the lack of any apparent motive for the killing. In contrast, the evidence in the present case tended to show that defendant made no efforts to assist the victim. In fact, in his statement to police, defendant admitted taking the victim's wallet and automobile immediately after the victim was shot. Further, the jury in the present case found as an aggravating circumstance that defendant committed the murder while engaged in the commission of or attempting to commit robbery with a firearm and kidnapping. This aggravating circumstance was not found in *Bondurant.*

For the foregoing reasons, we conclude that each of the cases in which we have found the death penalty to be disproportionate is distinguishable from the present case.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum,* 334 N.C. at 244, 433 S.E.2d at 164. Although we have repeatedly stated that we review all of the cases in the pool when engaging in this statutory duty, it is worth noting again that "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* It suffices to say here that we conclude the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment.

In *State v. Smith,* 305 N.C. 691, 292 S.E.2d 264, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), for example, the defendant kidnapped the victim at gunpoint, forced her to drive to a concealed

area, took her money, raped her, and then killed her. As in *Smith*, the jury here found that the murder was especially heinous, atrocious, or cruel and that it was committed while defendant was engaged in the commission of kidnapping. Additionally, the jury here, as in *Smith*, found defendant guilty on two theories of murder. After considering *Smith* and other similar cases in which we have found sentences of death not to be disproportionate, we conclude that this case is more similar to those cases than to the cases in which we have found the sentence of death to be disproportionate. Further, a review of our prior cases convinces us that juries have not consistently returned recommendations of life imprisonment in cases similar to the present case. *See State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). Accordingly, we conclude that the sentence of death recommended by the jury and ordered by the trial court in the present case is not disproportionate.

For the foregoing reasons, we hold that the defendant received a fair trial, free of prejudicial error, and that the sentence of death entered in the present case must be and is left undisturbed.

NO ERROR.