STATE OF NORTH CAROLINA v. DONNIE RAY HALL

No. 8917SC623

(Filed 3 April 1990)

1. **Criminal Law § 34.8 (NCI3d); Rape and Allied Offenses § 4.1 (NCI3d)— rape of stepdaughter—prior offenses against victim**

    In a prosecution of defendant for the second degree rape of his stepdaughter, evidence that defendant had pled guilty to two counts of taking indecent liberties with the victim three years earlier was properly admitted to show defendant's common scheme or plan. N.C.G.S. § 8C-1, Rule 404(b).

    **Am Jur 2d, Evidence § 326; Rape § 70.**

2. **Rape and Allied Offenses § 4 (NCI3d)— post-traumatic stress disorder—characteristics of sexually abused children**

    Expert testimony that an alleged rape victim suffered from post-traumatic stress disorder and from a conversion disorder was admissible to help the jury determine if a rape in fact occurred. Furthermore, expert testimony about symptoms and characteristics typically exhibited by sexually abused children was admissible to help the jury understand the behavior

patterns of sexually abused children and assist it in assessing the credibility of the victim.

**Am Jur 2d, Expert and Opinion Evidence §§ 196, 197; Infants § 17.5; Rape § 68.5.**

3. **Criminal Law § 51 (NCI3d); Rape and Allied Offenses § 4 (NCI3d)— expert in child psychiatry—qualification to testify about PTSD**

   An expert in the field of child psychiatry was properly permitted to testify about post-traumatic stress disorder even though there was no evidence that he had received specialized training in such disorder.

**Am Jur 2d, Expert and Opinion Evidence §§ 196, 197; Infants § 17.5; Rape § 68.5.**

4. **Criminal Law § 51 (NCI3d)— clinical social worker—qualification to testify—profile of sexually abused children**

   The trial court properly exercised its discretion in permitting a clinical social worker to testify regarding the profile of sexually abused children where the witness has a degree in psychology and a Masters degree in counseling; she has had specific training in family violence issues; and she has handled a case load as a social worker of at least fifty percent child sexual abuse victims.

**Am Jur 2d, Expert and Opinion Evidence §§ 196, 197; Infants § 17.5; Rape § 68.5.**

5. **Rape and Allied Offenses § 4 (NCI3d)— PTSD in rape victim— length of symptoms—relevancy**

   Testimony by a child psychiatrist regarding the length of time that characteristics of sexual abuse, including PTSD, could persist in a sexual abuse victim was relevant to show that diagnoses of PTSD and conversion disorder made in April and May of 1988 were consistent with a rape occurring in February 1988. Furthermore, even if this evidence was irrelevant under N.C.G.S. § 8C-1, Rule 401, defendant failed to show that he was prejudiced thereby.

**Am Jur 2d, Expert and Opinion Evidence §§ 196, 197; Infants § 17.5; Rape § 68.5.**

STATE v. HALL

[98 N.C. App. 1 (1990)]

6. **Criminal Law § 89.1 (NCI3d) — attack on victim's credibility — admissibility of character evidence**

Cross-examination of a child rape victim about prior inconsistent statements made to her doctor, her mother, and at the preliminary hearing constituted an attack on her credibility such that the State could present reputation or opinion evidence as to the victim's character for truthfulness. N.C.G.S. § 8C-1, Rule 608.

**Am Jur 2d, Evidence §§ 339, 342, 343.**

7. **Criminal Law § 89.1 (NCI3d) — character witness — sufficient contact with community**

A school guidance counselor had sufficient contact with an appreciable group of people who had an adequate basis upon which to form their opinion of an alleged rape victim's reputation for truthfulness to permit her to testify as to the victim's reputation for truthfulness among the faculty at her school.

**Am Jur 2d, Evidence §§ 339, 342, 343.**

8. **Criminal Law § 50.1 (NCI3d); Rape and Allied Offenses § 4.3 (NCI3d) — rape victim — improper expert testimony on credibility**

Testimony by a clinical social worker who counseled an alleged rape victim that the victim had a reputation for truthfulness in her school community constituted improper expert testimony on the credibility of the victim as a witness. However, defendant failed to show prejudice from the erroneous admission of this testimony. N.C.G.S. § 8C-1, Rules 405(a) and 608.

**Am Jur 2d, Expert and Opinion Evidence § 191.**

9. **Criminal Law § 158 (NCI3d) — ruling on examination of witness's notes — absence of notes from record**

The appellate court had no basis to review the trial judge's ruling under N.C.G.S. § 8C-1, Rule 612 that defendant was not entitled to examine a portion of an officer's investigative notes in preparation for cross-examining the officer where the notes were not in the record on appeal.

**Am Jur 2d, Appeal and Error §§ 397-400.**

STATE v. HALL

[98 N.C. App. 1 (1990)]

**10. Rape and Allied Offenses § 5 (NCI3d) — second degree rape — sufficient evidence of force**

There was sufficient evidence that defendant acted "by force and against the will of the other person" to support his conviction of second degree rape of his fifteen-year-old stepdaughter where the State's evidence tended to show that defendant pushed the victim onto her back when she tried to turn away and held her arms or hands during the act of intercourse; defendant repeatedly told the victim not to tell anyone and threatened to kill her and her family members if she did; the victim told defendant several times to leave her alone but did not scream because she was afraid; and defendant was the male parent figure in the victim's household. N.C.G.S. § 14-27.3(a)(1).

**Am Jur 2d, Rape §§ 88-92.**

APPEAL by defendant from judgments entered 20 January 1989 by *Judge Melzer A. Morgan, Jr.*, in SURRY County Superior Court. Heard in the Court of Appeals 17 January 1990.

Defendant was indicted for second degree rape of his step-daughter in violation of N.C. Gen. Stat. § 14-27.3(a)(1) and for sexual activity by a substitute parent in violation of N.C. Gen. Stat. § 14-27.7. The State's evidence tended to show the following: Defendant, his fifteen-year-old stepdaughter, and a family friend returned from visiting friends after midnight on Sunday, 14 February 1988. That night, defendant came into the bedroom the victim shared with her younger stepsister and had intercourse with the victim. Over the next few days, the victim reported the incident to Detective Gray Shelton of the Mount Airy Police Department, Sandra Miller, her school guidance counselor, and the Department of Social Services. Approximately six weeks after the alleged rape, the victim was admitted to Baptist Hospital and diagnosed as suffering from post-traumatic stress disorder and a conversion disorder. The victim was re-admitted to the hospital in July after taking an overdose of prescription drugs. During her second hospital stay, with the assistance of Detective Shelton, the victim telephoned the defendant and taped their conversation. The tape was played to the jury. In this conversation, defendant promised "never to do that again" and stated "Yeah I know'd it was wrong. Common sense . . . ."

STATE v. HALL

[98 N.C. App. 1 (1990)]

According to testimony from both the victim and the defendant, defendant had pleaded guilty to two counts of taking indecent liberties with the victim in 1985. Additional pertinent evidence is set out in the opinion.

Defendant was convicted of both offenses and sentenced to a total of thirty-six years imprisonment. From this judgment defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John F. Maddrey, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant.*

ARNOLD, Judge.

[1] Defendant first assigns error to the admission of testimony from the victim that he had pleaded guilty to two counts of taking indecent liberties with the victim in 1985. The trial judge, in ruling on defendant's motion to suppress those convictions, found that the 1985 and 1988 events involved the same victim and occurred in the same bedroom. He also found and concluded that the 1985 events were not too remote in time from the 1988 event since the defendant had been imprisoned for some time less than one year following his October 1985 conviction and did not return to the family residence until April 1987, ten months before the alleged rape occurred. The judge further concluded that the 1985 events "are relevant to the defendant's motive, intent, or common plan in February 1988. . . . The danger of unfair prejudice is outweighed by the probative value where the issue is that no such event occurred."

Defendant argues and we agree that his motive or intent was not at issue in this case, since the issue was whether the alleged victim was raped at all. The only remaining basis in the judge's order for admitting the evidence is "common plan." Defendant argues that evidence of his prior crimes shows only that he had engaged in conduct similar to the charged offense in the past. He further argues that admitting such evidence for that purpose violates the N.C. Gen. Stat. § 8C-1, Rule 404(b) prohibition against using evidence of defendant's past sexual misconduct to show he committed the rape in question. He further contends that admitting his convictions as evidence of a "common plan" defeats the purpose of the Rule

404(b) prohibition. Therefore, defendant argues that the evidence should have been excluded under Rule 404(b) and if admitted under Rule 404(b), should have been excluded under N.C. Gen. Stat. § 8C-1, Rule 403 as unfairly prejudicial.

As a general rule, extrinsic evidence of a defendant's past criminal activities or misconduct is not admissible when its only logical relevancy is to suggest defendant's propensity or predisposition to commit the offense with which he is charged. *State v. Shane,* 304 N.C. 643, 653-4, 285 S.E.2d 813, 820 (1982); Rule 404(b). However, such evidence is admissible when it bears on "genuine questions concerning knowledge, identity, intent, motive, plan or design, connected crimes . . . . " *Id.* at 654, 285 S.E.2d at 820. "Common plan," the basis for admission relied upon here, has been explained as follows. "Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged. . . ." *State v. McClain,* 240 N.C. 171, 176, 81 S.E.2d 364, 367 (1954). When plan, design, or scheme is the basis for admitting evidence of similar acts to prove the act charged, the rationale is that all the acts show "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." 2 Wigmore on Evidence § 304 at 202 (3d ed. 1940).

Rule 404(b) has been interpreted quite liberally by our courts when the prior acts sought to be admitted are prior sex offenses. 1 Brandis on North Carolina Evidence, § 92 at 420 (3d ed. 1988). Evidence of other sex acts or crimes committed by the defendant against the same victim has been held admissible in numerous cases under the "common scheme or plan" exception in Rule 404(b). *State v. Shamsid-Deen,* 324 N.C. 437, 445, 379 S.E.2d 842, 847 (1989) (rape; prior similar sex acts over eleven-year period against same victim, defendant's daughter, admissible to show "defendant's common scheme to abuse the victim sexually"); *State v. Frazier,* 319 N.C. 388, 390, 354 S.E.2d 475, 477 (1987) (first degree sex offense; several instances of prior sexual conduct with victim, defendant's stepson, aged nine, admissible to show a "continuing scheme to commit sexual acts against the victim"); *State v. Sills,* 311 N.C. 370, 377-8, 317 S.E.2d 379, 383-84 (1984) (rape; one instance of prior intercourse with same child victim); *State v. Summers,* 92 N.C. App. 453, 459-60, 374 S.E.2d 631, 635 (1988), *disc. rev. denied,* 324

STATE v. HALL

[98 N.C. App. 1 (1990)]

N.C. 341, 378 S.E.2d 806 (1989) (rape; approximately ten instances of prior sexual contact with child victim, admissible to "establish a plan or scheme by defendant to sexually abuse the victim when the victim's mother went to work").

We recognize that the distinction between admitting evidence of other crimes to show a propensity or predisposition to commit the crime charged and admitting such evidence to show a common scheme or plan can be extremely difficult to draw. When evidence is offered for the latter purpose, it "should be examined with especial care to see that it is really relevant to the establishment of a system, design or plan, and does not merely show character or a disposition to commit the offense charged." 1 Brandis, *supra*, § 92 at 415.

In this case, the issue was whether the alleged rape did in fact occur. Since the victim did not report the alleged rape for several days, no physical evidence could be obtained. Thus, the admission of defendant's prior convictions was significant in establishing whether a rape occurred. Given our courts' liberal attitude toward admitting evidence of similar sex offenses under Rule 404(b), we find no error in the trial court's admission of defendant's prior convictions for taking indecent liberties with the prosecutrix.

Even if evidence is admissible under Rule 404(b), the trial court must still weigh its probative value against any danger of unfair prejudice to the defendant under Rule 403. This decision rests in the sound discretion of the trial judge and, given the liberal interpretation of Rule 404(b) in this setting, we find no abuse of discretion here.

[2] Defendant next assigns error to several aspects of the expert testimony about post-traumatic stress disorder ("PTSD"), conversion reaction, and the characteristics of sexual abuse victims. First, defendant argues that PTSD, conversion disorders, and the characteristics of child victims of sexual abuse are not proper subjects for expert testimony in North Carolina. Dr. Roy Haberkern, a child psychiatrist, testified that the prosecutrix had been diagnosed as suffering from PTSD and conversion disorder. Dr. Sarah Sinal, a pediatrician, also testified that a diagnosis of conversion reaction had been made. Judy Stadler, a clinical social worker, testified about a "profile" or set of characteristics typical of children who have been sexually abused.

In general, expert opinion testimony is admissible when specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. N.C. Gen. Stat. § 8C-1, Rule 702. In this case, the occurrence of the rape itself was the central fact in issue. A recent case from this Court, *State v. Strickland*, 96 N.C. App. 642, 387 S.E.2d 62 (1990), held that, based on the trend in other jurisdictions as well as statements by our Supreme Court, "evidence on PTSD would be admissible in North Carolina courts." Dr. Haberkern's testimony regarding PTSD was, therefore, properly admitted to help the jury determine if a rape had in fact occurred. Testimony by qualified experts about symptoms and characteristics typically exhibited by sexually abused children is also a proper topic for expert testimony because it could "help the jury understand the behavior patterns of sexually abused children and assist it in assessing the credibility of the victim." *State v. Kennedy*, 320 N.C. 20, 31-2, 357 S.E.2d 359, 366 (1987). Judy Stadler's testimony on this topic was also properly admitted. Similarly, testimony from the two physicians that the prosecutrix suffered from a conversion disorder, a paralysis without any neurological basis resulting from severe anxiety or depression and consistent with having been sexually abused, was a proper subject for expert testimony. This testimony, if believed, would help the jury determine the question of whether the prosecutrix had been raped.

[3] Defendant next argues that even if testimony on PTSD was properly admitted, Dr. Haberkern was not qualified to testify regarding this disorder because there was no evidence that he received specialized training in PTSD. Whether a witness is qualified as an expert is within the discretion of the trial judge and will not be reversed on appeal absent a complete lack of evidence to support the ruling. *State v. Howard*, 78 N.C. App. 262, 270, 337 S.E.2d 598, 603 (1985), *disc. rev. denied*, 316 N.C. 198, 341 S.E.2d 581 (1986). Furthermore, an expert need not have had experience in the very subject at issue to qualify. *Id*. Dr. Haberkern is Chief of Child Psychiatry at Baptist Hospital, a trained pediatrician and had experience diagnosing and treating sexually abused children in his training and practice and as part of the Child Medical Evaluation Program in this state. Since Dr. Haberkern was qualified as an expert witness in the field of child psychiatry and PTSD is a recognized psychiatric diagnosis, *Strickland*, 96 N.C. App. 646, at 387 S.E.2d 65, the trial court properly exercised its discretion in allowing Dr. Haberkern to testify regarding PTSD.

**[4]** Defendant next argues that Judy Stadler, the clinical social worker, was not qualified to testify to the profile or characteristics of sexually abused children. Ms. Stadler has an undergraduate Psychology degree, a Masters degree in Counseling, specific training in family violence issues and, during her employment as a social worker in Surry County, handled a case load of at least fifty percent child victims of sexual abuse. The trial court properly exercised its discretion in allowing Ms. Stadler to testify regarding the profile of sexual abuse victims. *See Howard* at 270, 337 S.E.2d at 603.

**[5]** Defendant next argues that the doctors' testimony regarding the length of time that characteristics of sexual abuse, including PTSD, could persist in a sexual abuse victim should have been excluded as irrelevant to the issue of defendant's guilt under N.C. Gen. Stat. § 8C-1, Rule 401. Defendant further argues that the testimony was likely to inflame the jury. The central issue at trial was whether a rape had in fact occurred. Because of the lack of physical evidence, the State relied heavily on expert testimony that the prosecutrix exhibited characteristics typical of sexual abuse victims to prove that she had been abused. The State argues that the testimony at issue here was relevant to show that the diagnoses made by Drs. Sinal and Haberkern in April and May of 1988 were consistent with a rape occurring in February 1988. Furthermore, even if this evidence was irrelevant under Rule 401, defendant has not shown a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C. Gen. Stat. § 15A-1443(a).

Defendant next assigns error to the admission of testimony during the State's case in chief regarding the victim's reputation for truthfulness. N.C. Gen. Stat. § 8C-1, Rule 608 in pertinent part provides:

(a) Opinion and Reputation Evidence of Character. The credibility of a witness may be . . . supported by evidence in the form of reputation or opinion . . . subject to these limitations:

(1) the evidence may refer only to character for truthfulness or untruthfulness, and

(2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

[6] Defendant first argues that the second limitation of subdivision (a), the requirement that the victim's character for truthfulness has been attacked, was not met. The rule allows character evidence for truthfulness after an attack "by opinion or reputation evidence *or otherwise.*" Rule 608 (emphasis added). On cross-examination of the victim, the defendant's attorney repeatedly attempted to impeach her by asking her about prior inconsistent statements made to her doctor, her mother, and at the preliminary hearing. This cross-examination constituted an attack on her credibility such that the State could then present reputation or opinion evidence as to the victim's reputation for truthfulness.

[7] Defendant next argues that the testimony from Sandra Miller and Judy Stadler regarding the victim's reputation for truthfulness was inadmissible. As to Miller's testimony, defendant argues that the State failed to lay a proper foundation to introduce reputation evidence of the victim's character for truthfulness. Before a witness may testify to another's reputation, the proponent of that evidence must demonstrate that the testifying witness has sufficient contact with the community to qualify him as knowing the general reputation of the person in question. *State v. Morrison,* 84 N.C. App. 41, 47, 351 S.E.2d 810, 814, *cert. denied,* 319 N.C. 408, 354 S.E.2d 724 (1987). Sandra Miller, who testified to the victim's reputation for truthfulness among the faculty at the victim's school, was a guidance counselor at that school during the school year in which the rape allegedly occurred. She was, therefore, sufficiently familiar with "an appreciable group of people who have adequate basis upon which to form their opinion," *id.* at 48, 351 S.E.2d at 814, of the victim's reputation for truthfulness.

As to Stadler's testimony, defendant argues that it was inadmissible on two grounds: first, under N.C. Gen. Stat. § 8C-1, Rule 405(a), which prohibits "[e]xpert testimony on character or a trait of character . . . as circumstantial evidence of behavior," and second, because the State failed to lay a proper foundation for this evidence of the victim's reputation. Because of our disposition of defendant's first argument, we need not reach the second.

[8] Judy Stadler was a clinical social worker with Surry County community agencies who counseled the victim for about two months in 1986 and then on an emergency visit in March 1988. Although she was initially allowed to testify to her *opinion* of the victim's character for truthfulness, the trial judge reversed his ruling

moments later, sustained defendant's objection to this testimony, and instructed the jury to disregard the testimony. Following a *voir dire* and arguments, the trial judge allowed Stadler to testify to the victim's *reputation* for truthfulness in the school community.

Defendant contends, and we agree, that the admission of Stadler's testimony that the victim had a reputation for truthfulness in her school community was error. Expert testimony on the credibility of a witness is not admissible. *See* N.C. Gen. Stat. § 8C-1, Rules 405(a), 608; *State v. Kim*, 318 N.C. 614, 620-1, 350 S.E.2d 347, 351 (1986). The error does not, however, entitle defendant to a new trial. To warrant a new trial, defendant must show that the error was prejudicial according to the standard set out in N.C. Gen. Stat. § 15A-1443(a).

In this case, defendant has failed to show prejudice resulting from the error in admitting the testimony at issue. Our courts have found prejudicial error when the State's case against the defendant hinged almost entirely on the credibility of the victim. *Kim* at 622, 350 S.E.2d at 352; *State v. Aguallo*, 318 N.C. 590, 599, 350 S.E.2d 76, 82 (1986); *State v. Jenkins*, 83 N.C. App. 616, 624-5, 351 S.E.2d 299, 304 (1986), *cert. denied*, 319 N.C. 675, 356 S.E.2d 791 (1987); *State v. Holloway*, 82 N.C. App. 586, 587-8, 347 S.E.2d 72, 73-4 (1986). In this case, the State's case was not entirely dependent on the victim's testimony. *See State v. Teeter*, 85 N.C. App. 624, 633, 355 S.E.2d 804, 809, *disc. rev. denied*, 320 N.C. 175, 358 S.E.2d 67 (1987). Also, before Stadler testified to the victim's reputation for truthfulness, the jury had already heard lengthy testimony from the victim and testimony from two other witnesses to whom the victim had spoken about the alleged rape. The jury, therefore, could make their own assessment of the victim's credibility apart from Stadler's testimony on that subject. *See id.* at 632-33, 355 S.E.2d at 809. Under these circumstances, defendant has not shown a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C. Gen. Stat. § 15A-1443(a).

[9] Defendant next assigns error to the trial judge's ruling under N.C. Gen. Stat. § 8C-1, Rule 612, that defendant could not review a portion of a witness's notes designated "Court's Exhibit #1." Detective Gray Shelton, who had investigated the offenses for which defendant was tried, brought his investigative notes to the witness stand. Following Shelton's direct examination, defendant asked to

examine Shelton's notes in preparation for cross-examination. The State raised no objection to the defendant reviewing those notes the witness had used during his testimony, but argued that one separate section of the notes contained information on the victim's drug overdose the summer following the rape. Because this information was unrelated to Shelton's testimony, the State argued, it was not subject to defendant's review. The trial judge marked that particular section of Shelton's notes "Court's Exhibit #1." After reviewing the exhibit and questioning Shelton, the trial judge found that Shelton had not used the section in question before or during his testimony and alternatively that it was not in the interests of justice to disclose the exhibit to defendant. The judge then ordered the exhibit sealed for appellate review.

Defendant asks this Court to review the exhibit to determine whether defendant was entitled to its production. However, because Court's Exhibit #1 is not in the record, we have no basis to review the trial judge's application of Rule 612 to Shelton's notes. See State v. Steele, 86 N.C. App. 476, 478, 358 S.E.2d 98, 99, disc. rev. denied, 320 N.C. 797, 361 S.E.2d 86 (1987).

[10] In his last assignment of error, defendant contends the trial court erroneously denied his motion to dismiss the charge of second degree rape. He argues that the State failed to present evidence of force, actual or constructive, and that even if such evidence were present, there was no evidence that the victim resisted or wanted to resist that force. Second degree rape is vaginal intercourse by force and against the will of the victim. N.C. Gen. Stat. § 14-27.3(a)(1).

> The requisite force may be established either by actual, physical force or by constructive force in the form of fear, fright or coercion. Constructive force is demonstrated by proof of threats or other actions by the defendant which compel the victim's submission to sexual acts. Threats need not be explicit so long as the totality of circumstances allows a reasonable inference that such compulsion was the unspoken purpose of the threat.

State v. Etheridge, 319 N.C. 34, 45, 352 S.E.2d 673, 680 (1987) (citations omitted). The circumstances surrounding a particular parent-child relationship may support an inference of constructive force. See id. at 47, 352 S.E.2d at 681. "[E]vidence of physical resistance is not necessary to prove lack of consent . . . . [C]onsent

which is induced by fear of violence is void . . . ." *State v. Hall*, 293 N.C. 559, 563, 238 S.E.2d 473, 476 (1977).

In this case, the victim testified that the defendant pushed her onto her back when she tried to turn away and held her arms or hands during the act of intercourse. She also stated that defendant repeatedly told her not to tell anyone and threatened to kill her and her family members if she did. She testified that she told him several times to leave her alone, but did not scream because she was afraid. Additionally, defendant was the male parent figure in the victim's household. We find this evidence sufficient to show that the defendant acted "by force and against the will of the other person," as required by N.C. Gen. Stat. § 14-27.3(a)(1). *See State v. Hosey*, 79 N.C. App. 196, 200-201, 339 S.E.2d 414, 416, *aff'd*, 318 N.C. 330, 348 S.E.2d 805 (1986).

No error.

Chief Judge HEDRICK and Judge WELLS concur.