STATE OF NORTH CAROLINA v. JAMES THOMAS JORDAN, JR.

No. COA97-164

(Filed 3 February 1998)

1. **Evidence and Witnesses § 1255 (NCI4th)— right to silence—custody—invocation of right to counsel—waiver—initiation of conversation—incriminating statements**

    The trial court properly concluded that defendant's constitutional right to silence was not violated by police officers while he was in custody where the evidence showed that defendant invoked his right to counsel but then initiated further conversation with the police officers and made a knowing and intelligent waiver of his previously asserted right to counsel.

2. **Constitutional Law § 189 (NCI4th)— robbery and larceny—separate takings—not double jeopardy**

    The trial court did not err in finding that defendant's constitutional rights against double jeopardy were not violated by his being sentenced for both larceny and armed robbery in that there were two separate takings where there was a lapse of time between the defendant's taking of credit cards and jewelry in the victim's house and his leaving the house and stealing the victim's car.

3. **Evidence and Witnesses § 1617 (NCI4th)— 911 call—reasoned decision—no abuse of discretion**

    The trial court did not abuse its discretion by admitting into evidence a tape recording of a 911 call from a robbery victim's children where the record showed that the court made a reasoned choice and weighed the potential prejudice against its probative value in rebutting inferences of improper police conduct

that was raised by questions asked by defendant's counsel. N.C.G.S. § 8C-1, Rule 403.

Appeal by defendant from judgment and commitment entered 19 July 1996 by judge Forrest D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 October 1997.

*Attorney General Michael F. Easley, by Associate Attorney General H. Dean Bowman, for the State.*

*Appellate Defendant Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Charlesena Elliott Walker, for defendant-appellant.*

WYNN, Judge.

If a suspect requests counsel while in police custody, in order to protect the Fifth Amendment privilege against self-incrimination, the police must terminate interrogation unless the suspect initiates further communication. Because the defendant in this case initiated further communication after asserting his right to counsel, we affirm the trial court's denial of his motion to suppress his incriminating statements. Secondly, a defendant may be convicted of both armed robbery and larceny if the evidence shows that the defendant committed two separate takings. Because the evidence shows that the defendant in this case stole from the victim in her house and later stole her car, there were two takings to support his convictions for both crimes. Finally, we find no error in the trial court's admission into evidence of a tape recording of a 911 call from the victim's children.

Theresa Pollack was murdered by a gun shot to the head on 8 February 1995. In connection with this murder, James Thomas Jordan, Jr., was charged with first-degree murder, armed robbery, felonious breaking and entering, and felonious larceny. A jury convicted him of all charges and he was sentenced to consecutive terms of life imprisonment without parole. Jordan appeals.

I.

[1] Prior to his trial, Jordan moved the trial court to suppress inculpatory statements that he made while in police custody, contending that the statements were obtained in violation of his constitutional right to silence because they were elicited when officers continued to interrogate him, while he was in police custody, after he requested counsel. The trial court concluded that Jordan had invoked his right

to counsel but that he also initiated further conversation with the police and made a knowing and intelligent waiver of his previously asserted right to counsel. On this reasoning the trial court denied Jordan's motion to suppress. We affirm that denial.

The trial court made findings based on evidence elicited during the *voir dire* hearing that after arresting Jordan, Charlotte police informed him of his rights and proceeded to question him. Jordan testified at the *voir dire* hearing that he understood his rights when they were explained to him. According to his testimony, his purpose in cooperating was to learn how much evidence the officers had against him.

Following several hours of interrogation, Jordan indicated that he "might" need an attorney. The officer questioning him immediately stopped, left the interview room, and informed his superior, Sergeant Rick Sanders, of what Jordan had said. Sergeant Sanders went into the interview room and asked Jordan if he needed a lawyer. Jordan responded "yes, I've told them the truth." Sergeant Sanders replied "no you did not that's bull shit, you're lying, and you're going to jail for murder." Sergeant Sanders then ordered his fellow officers to book Jordan.

The officers returned Jordan to the interview room and left him there alone for twenty minutes while an officer located the proper forms. When the officer brought the forms to Jordan, he requested to use the rest room. Officer Mike Sanders stated that sometime during the booking process and when he was taken to the rest room, Jordan stated "I told you I had something else to say if I was going to be charged." Jordan was returned to the interview room and left there by himself while the officer that he spoke to reported the statement. The officers conferred amongst themselves and concluded that the defendant was attempting to initiate further conversation. The police then re-approached Jordan, verified that he wanted to speak without a lawyer, and subsequently elicited the incriminating statements.

Other findings made by the trial court indicated that the police repeatedly informed Jordan of his rights during the interrogation process. In particular, when the police re-approached him after he had made the statement in the bathroom, the trial court found that a detective informed him that he had invoked his right to counsel, the police were compelled to stop interviewing him, and that they would not seek any further information from him unless he reinitiated con-

tact. Furthermore, the officer again explained the defendant's right to not talk without a lawyer present. Jordan then said that he wished to talk with the officers. He then said that he wanted to waive his right to have an attorney present, and went on to make the incriminating statements.

Once a suspect in police custody requests counsel, the police may not further interrogate the suspect until counsel has been provided, unless the suspect initiates further communication. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386 (1981). In *Rhode Island v. Innis*, 446 U.S. 291, 301-02, 64 L. Ed. 2d 297, 308 (1980), the United States Supreme Court established the test for what constitutes interrogation:

> [Interrogation is a] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . . But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

(footnotes omitted) (emphasis added).

We agree with the trial court that Jordan invoked his right to counsel. Thus the initial issue is whether the police continued to interrogate Jordan after he asserted that right. Jordan contends that the remarks Sergeant Sanders made to him after he invoked his right to counsel constituted the functional equivalent of interrogation, both when considered alone and in combination with the booking procedure. We disagree.

The officer's statement in this case was not interrogation or its functional equivalent. The entire exchange was very brief. Nor was this statement "reasonably likely to evoke an incriminating response." There is nothing to indicate that an officer should have known that this statement would lead the suspect to make an incriminating response.

We reach the same conclusion when viewing the statement in context with the booking procedure used. The officer left the room and closed the door after making the statement. The policemen left Jordan alone while they got the forms for booking him. In contrast to Jordan's contention, the lack of police presence during the booking

process is not reasonably likely to evoke an incriminating response. Accordingly, we hold that the police did not continue to interrogate Jordan after he asked for a lawyer.

We next turn to whether the defendant reinitiated communication. The record reflects abundant support for the trial court's conclusion that he did. After asserting his right to counsel, Jordan spontaneously made in the bathroom the statement: "I told you I had something else to say if I was going to be charged." After he made the statement, the police proceeded cautiously, again informing him of his rights and ensuring that he wanted to talk to them before they began questioning him again. Under these circumstances, we find the evidence supports the trial court's finding that Jordan reinitiated communication. Accordingly, we hold that the trial court did not err by admitting into evidence the statements made by Jordan.

II.

[2] Jordan next argues that the trial court violated the constitutional prohibition against double jeopardy by sentencing him for both larceny and armed robbery. He argues that since there was no temporal break between his taking of jewelry and credit cards from the victim, and the theft of the victim's vehicle, he can not be charged for two different crimes for the same offense. We disagree.

In *State v. White*, 322 N.C. 506, 369 S.E.2d 813 (1988), our Supreme Court held that larceny is a lesser included offense of armed robbery. *Id.* at 514, 369 S.E.2d at 817. In *State v. Adams*, the Court pointed out that " '[a] single larceny offense is committed when, as part of one continuous act or transaction, a perpetrator steals several items at the same time and place.' " 331 N.C. 317, 333, 416 S.E.2d 380, 389 (1992), *quoting State v. Froneberger*, 81 N.C. App. 398, 401, 344 S.E.2d 344, 347 (1986). For example, in *State v. Jaynes*, 342 N.C. 249, 464 S.E.2d 448 (1995), *cert. denied*, —— U.S. ——, 135 L. Ed. 2d 1080 (1996), the defendant placed property belonging to the victim in the victim's vehicles and drove them away. The Court held that "[t]he takings of the vehicles and the other items occurred simultaneously and were linked together in a continuous act or transaction" and that "there was no basis on which to distinguish the taking of the smaller items of personal property from the takings of the vehicles." *Id.* at 276, 464 S.E.2d at 464-65. Finding only one taking, the Court concluded that sentencing the defendant for both robbery and larceny violated double jeopardy. *Id.*

Likewise, in *State v. Buckner*, 342 N.C. 198, 464 S.E.2d 414 (1995), *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 47 (1996), the defendant shot the victim right after the victim got out of his car. *Id.* at 209, 464 S.E.2d at 420. The defendant then grabbed the victim's briefcase and drove away in the victim's car. *Id.* at 210, 464 S.E.2d at 420. On appeal from his convictions for armed robbery and larceny, the Court held that the defendant's constitutional right against double jeopardy was violated because both offenses were part of the same continuous transaction. *Id.* at 233, 464 S.E.2d at 434.

However, a defendant may be convicted of both armed robbery and larceny if the crimes involved two separate takings. *White,* 322 N.C. at 517, 369 S.E.2d at 818. As an example, in *State v. Robinson,* 342 N.C. 74, 463 S.E.2d 218 (1995), *cert denied,* —— U.S. ——, 134 L. Ed. 2d 793 (1996), the defendant shot the victim and then took the victim's wallet. *Id.* at 79-80, 463 S.E.2d at 221-22. The defendant then left the murder scene, went to a park, and walked around the neighborhood. *Id.* at 83-84, 463 S.E.2d at 224. The defendant later returned and took the victim's car. *Id.* The Court held that the takings of the wallet and the car were separate and the defendant was properly sentenced for both crimes. *Id.*

Similarly, in *State v. Barton,* 335 N.C. 741, 441 S.E.2d 306 (1994), the defendant shot and killed the victim. He then took his wallet, fled the murder scene in his car, and later took a firearm from the car's glove compartment. *Id.* at 744-45, 441 S.E.2d at 308. The Court upheld the defendant's separate convictions for armed robbery and larceny, stating the "armed robbery of the victim—resulting in the taking of his wallet and automobile—and the subsequent taking of the victim's firearm from his automobile constituted separate takings for double jeopardy purposes." *Id.* at 746, 441 S.E.2d at 309.

In the present case, Jordan was apparently initially motivated by his desire to steal the victim's car. However, once he entered her home he stayed for fifteen to twenty minutes. He walked through the victim's house, deciding what property he wanted to take. After taking credit cards and jewelry, he then went to her car and drove off. This distinguishes the present case from those where there was a continuous transaction. Both *Jaynes* and *Buckner* involved nearly simultaneous takings of property from the victim along with the theft of the victim's vehicle. Essentially, those were cases where there was one crime with multiple items of property stolen at the same time. Here, Jordan stole from the victim in her house. He then left her

house and stole her car. Because of the lapse of time between the two takings, we conclude that separate takings occurred in this case. Accordingly, we hold that the trial court did not err in sentencing the defendant for both armed robbery and larceny.

## III.

**[3]** Jordan finally argues that the trial court committed reversible error by admitting into evidence a tape recording of a 911 call from the victim's children because it was irrelevant and its prejudicial effect substantially outweighed its probative value. We disagree.

Under N.C. Gen. Stat. § 8C-1, Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The decision to exclude evidence under Rule 403 is left to the discretion of the trial court, and will only be reversed on appeal upon a showing that the decision was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision. *State v. Womble*, 343 N.C. 667, 690, 473 S.E.2d 291, 304 (1996), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d. 719 (1997).

Jordan argues that the tape was not relevant and that the trial court erred by admitting it because its potential prejudice substantially outweighed its probative value. Based on this alleged error, he argues that he did not receive a fair trial and asks for a new trial. Jordan's argument, however, fails to consider the discretion given to a trial court in ruling on a Rule 403 decision.

Rule 403 says that "evidence *may* be excluded," (emphasis added) not that the evidence *must* be excluded. As *Womble* points out, once the prerequisite of prejudice outweighing probative value is present, the rule places the decision on whether to exclude within the discretion of the trial court. Even assuming *arguendo* that we agreed with his argument that the potential prejudice of the tape outweighed its probative value, that showing is not sufficient to allow this Court to conclude that the trial court erred. As *Williams* illustrates, where the trial court is given discretion to make a decision and exercises that discretion, we may only reverse that decision if the appellant shows that the decision was not the result of a reasoned choice.

Jordan's brief does not, beyond merely pointing out that the prejudice outweighed the probative value, discuss how the trial court abused its discretion. Merely showing that the prejudice substantially outweighed the probative value of evidence does not suffice to show

abuse. A contrary result would effectively remove the discretion which the plain language of the statute entrusts to the trial court. Accordingly, following *Womble,* because no showing of an abuse of discretion was made, we affirm the trial court's decision.

Furthermore, we note that the record reflects that the trial court made a reasoned decision in admitting the tape. Initially the trial court ruled that the tape would be excluded. During the presentation of the State's case, the prosecutor moved for a reconsideration of the admissibility of the 911 tape. Following a discussion between the attorneys and the judge, the judge made the following comments:

> Well, but my question is this. There was a significant line of questions by [defense counsel] in cross-examination.
>
> For example, I wrote down in quotation marks in my notes that he asked Investigator Holl something about the fact that it is critically important not to destroy any evidence, and to preserve the integrity of the crime scene.
>
> Now a number of questions were asked in that vein as to seeking to get the officer to agree as to the importance of maintaining the security and the integrity of the crime scene.
>
> . . . .
>
> Well, clearly the question for me is one under Rule 403, and that involves a weighing of the probative value of the evidence that's being offered against the possible prejudicial effect.
>
> The possible inflammation of the passions of the jury and as well as the other considerations mentioned in that rule.
>
> . . . .
>
> In this particular case, I need to weigh the possible emotional effect of the playing of the tape against its probative value, and in the context in which it's being offered.
>
> There have been some questions raised as to whether or not the integrity of the crime scene was preserved in this particular case.
>
> Those questions were raised during the course of the cross-examination of Investigator Holl during the course of which same cross-examination, there were a number of references made to the fact that Investigator Holl had lied to Dennis Ingram in order to obtain information from Dennis Ingram.

And as a result of that, there certainly could be an inference by the jury of dishonesty on the part of police officers involved in the investigation.

And particularly when considered in conjunction with the word integrity of the crime scene, which word was specifically mentioned during the course of the examination, and it's natural that jurors might infer that the word integrity was associated, not only with the security at the time of the crime scene, but also with the honesty of the officers involved in the investigation of the crime scene.

Based upon that weighing, I am going to rule, in the exercise of discretion, that the 911 now has become admissible, and may be played to the jury.

It is apparent that the trial court's decision to admit the tape was a reasoned choice; the court weighed the potential prejudice against its probative value in rebutting inferences of improper police conduct that might of been raised by the questions asked by Jordan's counsel. Accordingly, we hold that the trial court did not abuse its discretion by admitting it.

For the reasons given above, we find that the defendant received a fair trial, free from prejudicial error.

No error.

Judges EAGLES and MARTIN, Mark D., concur.