RICHARD EDWARD REIS, Plaintiff-Appellant v. AMELIA WILSON HOOTS, Defendant-Appellee

No. COA98-20

(Filed 29 December 1998)

## 1. Evidence— relevance—conveyance of marital residence

The trial court did not err in an action arising from a separation agreement which had both a no molestation clause and a marital residence transfer clause by admitting evidence regarding transfers of plaintiff's interest in the marital residence to and from a third party and the third party's actions in attempting to eject defendant from the property. The evidence at issue was presented to prove defendant's counterclaim of harassment and, although circumstantial, was relevant to determine the underlying issue in the case.

## 2. Evidence— not unduly prejudicial—separation agreement—harassment

The trial court did not abuse its discretion in an action arising from a separation agreement with a no molestation clause and a marital residence transfer clause by admitting evidence concerning plaintiff's transfer of his interest in the residence to a third party who attempted to eject defendant. Although plaintiff contends that the probative value of the evidence is substantially outweighed by the danger of undue prejudice, the trial judge gave a limiting instruction, which indicates that he recognized the potential for prejudice and exercised his discretion.

## 3. Evidence— relevance—marital harassment—relationship with children

The trial court did not err in a counterclaim under the no molestation clause of a separation agreement by admitting evidence regarding plaintiff's relationship with his children where defendant sought damages for mental anguish and had to prove the emotional effect of plaintiff's harassment. The evidence was relevant in that having to cope with the pain and emotional distresses of the minor children would be almost certain to cause defendant emotional turmoil. Moreover, while the evidence was necessarily prejudicial to plaintiff, it was not unduly prejudicial.

**REIS v. HOOTS**

[131 N.C. App. 721 (1998)]

### 4. Evidence— hearsay—identification—marital harassment

There was no prejudicial error in a harassment counterclaim under a separation agreement where defendant, who alleged problems with lost mail, testified that a postmaster had identified a photograph of plaintiff. The evidence is classic hearsay; however, it was not prejudicial due to other sufficient evidence of plaintiff tampering with defendant's mail, including a guilty plea to a federal charge of mail fraud.

### 5. Damages and Remedies— contract—separation agreement—cost of lawsuit—mental suffering

The trial court did not err by denying plaintiff's motions for directed verdict and judgment n.o.v. in a harassment counterclaim arising from a separation agreement where plaintiff contended that defendant's evidence was insufficient to prove damages, but defendant testified as to monies expended on defending the multitude of lawsuits filed against her and testified as to the mental anguish she had suffered directly or indirectly.

Judge GREENE concurring.

Appeal by plaintiff from judgment entered 2 July 1997 by Judge Raymond A. Warren in Henderson County Superior Court. Heard in the Court of Appeals 20 October 1998.

*Prince, Youngblood & Massagee, by Sharon B. Alexander, for plaintiff-appellant.*

*No brief for defendant-appellee.*

SMITH, Judge.

The parties to this appeal were married on 15 November 1977, separated on 13 January 1990, and divorced on 19 February 1991. Pursuant to the parties' separation, they entered into a Contract of Separation and Property Settlement Agreement (Agreement). This Agreement reads, in pertinent part,

NO MOLESTATION. That each party shall be free from interference and control, direct or indirect, by the other. Neither party shall molest or harass the other, and further, that neither shall attempt by word or act to influence the life of the other, nor com-

pel or attempt to compel the other, to associate, cohabit or dwell with the other for any reason whatsoever.

. . . .

CHILD SUPPORT. That the Husband shall pay One-Hundred Ten Dollars ($110.00) per week in child support payments, to be allocated as follows . . . with the understanding that these support payments will be reduced pro rata as each child reaches eighteen . . . . In addition, as part of his child support payments, Husband agrees to make each and every house payment due on the former marital home until the youngest minor child reaches the age of eighteen, on April 1, 2000. . . .

REAL PROPERTY. That the Husband and Wife own a house and tract of land, formerly the marital residence . . . . That the Husband and Wife each agree that the Wife may reside in the former marital home until the youngest child turns eighteen years old, on April 1, 2000. That the Husband agrees that he will make the full house payment each and every month until April 1, 2000. At that time, three written appraisals shall be obtained . . . to determine the fair market value of the marital home. At that time the marital home shall be listed with a multiple listing service . . . at a price which shall not be less than the average of the three real estate appraisals. . . .

Wife acknowledges that the Husband paid Ten-Thousand Four-Hundred Dollars ($10,400.00) toward the purchase of said home prior to their marriage, and therefore the first Ten-Thousand Four-Hundred Dollars ($10,400.00) of the net proceeds of the sale of the marital home shall go to the Husband individually; the remaining net proceeds shall be divided equally between Husband and Wife.

. . . .

In the event Wife moves a male companion into the home, then at the election of Husband, the home may be sold immediately under the condition set forth above.

During the time the Wife occupies the marital home, Wife agrees not to cause waste to said marital home. Both Husband and Wife agree to maintain the marital home in its present condition, and to share equally in any maintenance expenses. . . .

. . . .

LEGAL FEES. That if either party breaches any of the terms of this agreement, the breaching party shall be required to pay reasonable attorney fees for the party whose rights were violated as a result of said breach.

Following the parties' divorce, defendant remarried and her new husband moved into the marital home. Plaintiff filed several civil actions against defendant to construe the terms of the Agreement, namely whether defendant's new husband was considered a "male companion," thus rendering the house subject to sale at plaintiff's election. Each action was dismissed by plaintiff. Plaintiff then conveyed his interest in the home to a third party, who subsequently harassed defendant, demanding that she and her family vacate the premises, even going so far as filing a criminal trespass action and an ejectment action, both of which were dismissed. When the third party's attempts proved unsuccessful, he reconveyed the interest to plaintiff. On 8 February 1993, plaintiff obtained an order from the district court, which construed the language of the Agreement to encompass new husbands within the meaning of "male companion" and directed that the residence be sold pursuant to the Agreement.

The residence was sold and the proceeds held by the Clerk's office for determination of distribution.

On 14 February 1995, plaintiff filed a complaint against defendant alleging breach of the Agreement (by delaying or interfering with the sale of the residence prior to the court order directing the sale) and waste with regard to the parties' former marital residence. Defendant answered and counterclaimed alleging, among other things, breach of the "No Molestation" clause of the Agreement. Specifically, defendant claimed that plaintiff breached the provision of the Agreement by: (a) causing a warrant to be issued for defendant's arrest; (b) filing numerous lawsuits against defendant, most of which were dismissed prior to disposition; and (c) intercepting her mail and disrupting the delivery of the same. Defendant sought recovery for monies expended on attorney's fees defending the multiple lawsuits filed against her and for mental anguish. All claims and counterclaims were dismissed prior to trial except for defendant's breach of Agreement claim. This issue was tried by jury during the 2 June 1997 civil session of Henderson County Superior Court. The jury returned a verdict finding that plaintiff had breached the Agreement and awarded defendant damages in the amount of $30,000. The judge entered judgment in accordance therewith and awarded

defendant attorney's fees in the sum of $8,351,50 in accordance with the Agreement. Plaintiff appeals.

## I.

Plaintiff, in three separate assignments of error, argues that certain evidence, which was admitted over objection during trial, should have been excluded as irrelevant and that the trial judge's failure to exclude such evidence amounted to prejudicial error.

The evidentiary rule of relevance is quite broad. Rule 401 states, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). The Federal Advisory Committee's Note to the federal rule, which is identical to the North Carolina rule, provides some clarification:

> Problems of relevancy call for an answer to the question whether an item of evidence, when tested by the processes of legal reasoning, possesses sufficient probative value to justify receiving it in evidence . . . .
>
> . . .
>
> Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Does the item of evidence tend to prove the matter sought to be proved? . . .
>
> . . .
>
> The rule uses the phrase "fact that is of consequence to the determination of the action" to describe the kind of fact to which proof may properly be directed. The language is that of California Evidence Code § 210; it has the advantage of avoiding the loosely used and ambiguous word "material." . . . The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action . . . .

Our courts have followed this interpretation and apply the rule of relevance broadly. *See, e.g., Farmers Federation, Inc. v. Morris*, 223 N.C. 467, 468, 27 S.E.2d 80, 81 (1943) (pre-rule case stating that evidence need not bear directly on the question in issue to be admissible; it is competent if it relates to one of the circumstances sur-

rounding the parties and necessary to be known to properly understand the issues or to weigh the reasonableness of their contentions); *State v. Wallace*, 104 N.C. App 498, 502, 410 S.E.2d 226, 228 (1991) (this standard gives the trial judge broad discretion to admit evidence); *State v. Hall*, 99 N.C. App. 1, 8, 390 S.E.2d 169, 173 (1990) (evidence is relevant so long as it assists the jury in understanding the evidence).

Thus, according to the Rules of Evidence, "[a]ll relevant evidence is admissible, except as otherwise provided . . . ." N.C. Gen. Stat. § 8C-1, Rule 402 (1992). The Rules then set forth a number of exceptions to admissibility. Most importantly, for the arguments set forth in this case, is Rule 403, which states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (1992).

[1] The first admission of evidence that plaintiff assigns as error relates to the conveyance of the marital residence to Mr. Henry Clay Ritter. He asserts that defendant's testimony regarding the transfers of the marital residence to and from Mr. Ritter and Mr. Ritter's actions in attempting to eject defendant from the property was irrelevant and inadmissible. Because the rule of relevance is so broad, we only consider whether this testimony " 'is one of the circumstances surrounding the parties, and necessary to be known to properly understand their conduct or motives, or to weigh the reasonableness of their contentions.' " *Farmers Federation*, 223 N.C. at 469, 27 S.E.2d at 81 (quoting *Bank v. Stack*, 179 N.C. 514, 516, 103 S.E. 6, 7 (1920)). Defendant's counterclaim relating to plaintiff's breach of the Agreement was based upon allegations of harassment by plaintiff. Among other things, defendant presented evidence of plaintiff's relationship with Mr. Ritter. Plaintiff's mother and Mr. Ritter and his wife had been "close family friends" for upwards of twenty years. Furthermore, plaintiff had known Mr. Ritter for approximately ten years. Defendant also presented evidence that the transfers to and from Mr. Ritter were for little or no consideration. Excise tax paid on the transfer to Mr. Ritter was ten dollars, and none was paid on the transfer back to plaintiff. Defendant's assertion at trial was that Mr. Ritter was acting on plaintiff's behalf and under plaintiff's control. Plaintiff made general objections to the admission of the evidence, which were overruled.

The evidence at issue was presented to prove defendant's counterclaim of harassment. Although circumstantial, it was relevant to determine the underlying issue in the case; that is, whether plaintiff breached the Agreement by molesting or harassing defendant. This assignment of error is overruled.

[2] With regard to this evidence, appellant contends, in the alternative, that if relevant, its probative value is substantially outweighed by the danger of undue prejudice. Whether to exclude evidence on this ground is within "the sound discretion of the trial court." *Pittman v. Barker*, 117 N.C. App. 580, 588, 452 S.E.2d 326, 331 (1995). In determining whether to exclude evidence on the grounds of undue prejudice, the trial court should consider "the probable effectiveness or lack of effectiveness of a limiting instruction." Fed. R. Evid. 403, Advisory Committee's Note. In this case, the trial judge instructed the jury as follows:

> You cannot hold the plaintiff, Mr. Reis, responsible for the actions of Mr. Ritter, no matter what such actions might have been, unless you find by the greater weight of the evidence that Mr. Ritter was acting in concert with, as the agent of or under the direction of Mr. Reis[.]
>
> So, if you find . . . that Mr. Henry Clay Ritter was acting under the direction of, in concert with or as the agent of Mr. Reis, you are permitted but not required to find the actions violated the terms of the contract between the parties. It is for you to decide if such actions constituted a violation of the terms of the separation contract.

Because the trial judge gave a limiting instruction with regard to the evidence in dispute, it follows that he recognized the potential for prejudice and exercised his discretion in permitting its introduction. This Court will not intervene where the trial court properly appraises the probative and prejudicial values of evidence under Rule 403. *See State v. Cotton*, 99 N.C. App. 615, 622, 394 S.E.2d 456, 459 (1990) (discussing expert testimony), *aff'd*, 329 N.C. 764, 407 S.E.2d 514 (1991). "It is only 'where the trial court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision' that the trial judge's ruling will be overturned on appeal." *State v. Mlo*, 335 N.C. 353, 374, 440 S.E.2d 98, 108 (1994) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)); *see also State v. Jordan*, 128 N.C. App. 469, 475, 495 S.E.2d 732, 736 (1998) (stating that trial court's evidentiary ruling "will only

be reversed on appeal upon a showing that the decision was mani-festly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision"). Plaintiff has not demonstrated any abuse of discretion, and therefore, the trial court's ruling will not be disturbed on appeal.

[3] Next, plaintiff argues that evidence admitted regarding his rela-tionship with his children was irrelevant and should have been excluded. The evidence at issue on this assignment of error is as follows:

Q: After the separation, did Mr. Reis have difficulty with his relationship with his three children?

A: Yes.

MR. REDDEN: Objection.

THE COURT: Overruled.

A: Yes, my 18 year old especially. At the time he was about 12 and Mr. Reis wouldn't even let him go and visit at his house. He would take the other two on weekends at first and he picked them up at day camp and one incident in particular he would pick all three of them up at day camp and he would drop Drew off where I was working and he dropped the kid off about half a mile from where I worked in a pouring down rain thunder storm and even that Christmas, Drew called his father and ask [sic] him if he couldn't at least come over at Christmas time. He said "don't worry about it, I'll send you a present."

MR. REDDEN: Objection and motion to strike.

THE COURT: Objection is overruled but I think we're losing the relevance of this.

Q: Had the continued lawsuits and the problems you've testified about in this Courtroom had any effect on your health?

A: Yes, and it has on my children as well.

MR. REDDEN: Objection, may it please the Court. She's ask-ing did it effect [sic] her health, yes and also effected [sic] my children.

THE COURT: Objection is overruled.

**REIS v. HOOTS**

[131 N.C. App. 721 (1998)]

A: My 16 year old was hospitalized in 1995 because of acute colitis. The Doctor said it was caused from—

Mr. Redden: Objection.

—extreme stress.

The Court: Overruled. Go ahead.

The issue before the jury was whether plaintiff breached the provision in the separation agreement that prohibited him from molesting or harassing defendant. To receive damages for mental anguish, defendant had to prove the emotional effect that plaintiff's harassment had on defendant. The evidence presented, while directly relating to the effect plaintiff's alleged conduct had on the parties' children, was relevant circumstantial evidence of the emotional effect plaintiff's harassment caused defendant. Having to cope with the pain and emotional distresses of her minor children would be almost certain to cause defendant emotional turmoil. Defendant's attorney elicited testimony regarding the parties' children's pain in order to prove the impact that plaintiff's conduct had on defendant.

Appellant contends, in the alternative, that if the evidence was relevant, its probative value was substantially outweighed by the danger for unfair prejudice. He argues that "this testimony would naturally cause the jury to be prejudiced against the Appellant simply because he was a 'bad' father." This argument is without merit. The evidence goes straight to the heart of the damages issue, i.e., the emotional strain placed on defendant due to plaintiff's alleged harassment. Although its admission would prejudice plaintiff, any evidence that is favorable to defendant will necessarily be prejudicial to plaintiff. *See State v. Weathers*, 339 N.C. 441, 449, 451 S.E.2d 266, 270 (1994). The question is whether the evidence is unduly prejudicial. We hold that it is not.

II.

[4] In appellant's next assignment of error, he argues that an out-of-court identification of him was inadmissible hearsay. We agree. During defendant's introduction of evidence, she sought to introduce evidence of plaintiff's interference with defendant's mail. She allegedly had multiple problems with "lost" mail, about which she complained to the postmaster. While on direct examination, defendant testified:

A. I talked with the Postmaster and as a result of that conversation, I went home and got a picture of Mr. Reis and she identified him—

MR. REDDEN: Objection.

THE COURT: Overruled.

A.—as someone she had seen sitting in the parking lot everyday at lunch time and she saw him going into the Post Office as she would leave for lunch. It's a small Post Office and she's the only one that [sic] works in there.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (1992). In this case, the out-of-court declarant is the postmaster, and the statement is offered not for impeachment or corroboration purposes, but to prove that plaintiff was the person seen by declarant. The evidence is classic hearsay prohibited by Rule 802, *see* N.C. Gen. Stat. § 8C-1, Rule 802 (1992), and does not fall within any of the statutorily defined exceptions, *see* N.C. Gen. Stat. § 8C-1, Rules 803, 804 (1992). No evidence was offered regarding the unavailability of the postmaster, nor did defendant offer any other basis for qualification of this testimony under any exception to the hearsay rule. Admission of this testimony was error.

This does not end our inquiry, however, for the appellant bears the burden to show error sufficient to enable the court to see that he was prejudiced or that the evidence probably influenced the verdict of the jury. *See Collins v. Lamb*, 215 N.C. 719, 2 S.E.2d 863 (1939); *State v. Murvin*, 304 N.C. 523, 284 S.E.2d 289 (1981). In this case, appellant has failed to prove that admission of this testimony prejudiced the outcome of this case. Looking to the facts of the case, even without this testimony, there is sufficient evidence of plaintiff tampering with defendant's mail. In fact, evidence was admitted showing (1) that plaintiff, although he had a primary post office box at another location, acquired a different box nearly adjacent to plaintiff's; (2) that a local detective caught plaintiff in the act of tampering with defendant's mail; and (3) that plaintiff was federally charged and tried for mail fraud, a charge to which he pled guilty. Therefore, it cannot be said that the inadmissible hearsay testimony prejudiced the outcome of the case. This assignment of error is overruled.

## III.

**[5]** Finally, appellant argues that the trial court erred in denying plaintiff's motions for directed verdict and judgment notwithstanding the verdict with regard to damages. He argues that defendant's evidence was "insufficient to prove that Appellee suffered any compensable damage as a result of those actions which could serve as a basis of a breach of contract." We disagree. To recover damages, defendant must prove that she suffered special damages as a result of the breach of contract. *See Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 673, 464 S.E.2d 47, 63 (1995). Such damages must have been within the contemplation of the parties. *See Troitino v. Goodman*, 225 N.C. 406, 412, 35 S.E.2d 277, 281 (1945). Furthermore, defendant must prove the amount of her special damages with a reasonable degree of certainty. *See Stanback v. Stanback*, 37 N.C. App. 324, 327, 246 S.E.2d 74, 78 (1978). In this case, defendant testified as to the monies expended on defending the multitude of lawsuits filed against her by either plaintiff or Mr. Ritter. Because defendant's claim was that plaintiff harassed her, thus breaching the Agreement, the costs related to such harassment are certainly compensable.

Additionally, appellant argues that defendant's evidence regarding her mental suffering was speculative at best. To recover damages for mental anguish in a breach of contract action, the claimant must show:

> "First, that the contract was not one concerned with trade and commerce with concomitant elements of profit involved. Second, that the contract was one in which the benefits contracted for were other than pecuniary, *i.e.*, one in which pecuniary interests were not the dominant motivating factor in the decision to contract. And third, the contract must be one in which the benefits contracted for relate *directly* to matters of dignity, mental concern or solicitude, or the sensibilities of the party to whom the duty is owed, and which *directly* involves interests and emotions recognized by all as involving great probability of resulting mental anguish if not respected."

*Johnson v. Ruark Obstetrics*, 327 N.C. 283, 301, 395 S.E.2d 85, 96 (1990) (quoting *Stanback*, 297 N.C. at 194, 254 S.E.2d at 620)). No physical injury or impact must be shown. *See id.* This is the law and the jury was so instructed. Defendant testified as to the stress, both financial and emotional, caused by the numerous lawsuits and mail tampering. She testified as to the mental anguish she had suffered

either directly or indirectly (by having to cope with the pain and turmoil plaintiff's actions caused the parties' children). Her testimony constituted sufficient evidence of damages to submit the case to the jury. The jury received and weighed the evidence and rendered a verdict and damage award in accordance therewith. Accordingly, the trial court did not err in denying plaintiff's motions and we find no prejudicial error.

No error.

Judges WALKER concurs.

Judge GREENE concurs in separate opinion.

Judge GREENE concurring.

I concur with the majority opinion, but write separately on the issue of damages in order to emphasize that it is rarely the case that damages for mental anguish are recoverable under a breach of contract theory. *See, e.g., Lamm v. Shingleton*, 231 N.C. 10, 14, 55 S.E.2d 810, 813 (1949). This is so because "contracts are usually commercial in nature," *id.*, and *"[p]ecuniary interests are paramount," Stanback v. Stanback*, 297 N.C. 181, 192, 254 S.E.2d 611, 619 (1979), *disapproved of on other grounds by Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981) (disapproving *Stanback's* statements regarding requirements for the tort of intentional infliction of emotional distress). But where the contract is not one for profit and the matters contracted for directly relate to "matters of dignity, mental concern or solicitude, or the sensibilities of the party to whom the duty is owed," and the contract directly involves interests "recognized by all as involving great probability of resulting mental anguish if not respected, . . . [then] mental anguish damages are a natural and probable consequence of breach, and it can reasonably be said that such damages were within the contemplation of the parties at the time they contracted." *Stanback*, 297 N.C. at 194, 254 S.E.2d at 620. It is also important to note that expert medical testimony is not always necessary to prove mental anguish. *McKnight v. Simpson's Beauty Supply, Inc.*, 86 N.C. App. 451, 454, 358 S.E.2d 107, 109 (1987) (noting that evidence that plaintiff was "shocked" and "upset" following defendant's actions was sufficient to show emotional distress, but expert medical testimony is necessary if the injury claimed is "an unusual emotional state, not within the common knowledge and experience of laymen,

that in itself requires medical diagnosis"); *Lamm*, 231 N.C. at 12, 55 S.E.2d at 811 (noting that plaintiff's testimony that defendants' breach of contract "caused her considerable shock and made her extremely nervous as a result of which she became a nervous wreck . . . [and that it] made her so nervous she could hardly stand up" was sufficient to show emotional distress); *McDaniel v. Bass-Smith Funeral Home, Inc.*, 80 N.C. App. 629, 633, 343 S.E.2d 228, 231 (1986) (noting that directed verdict should not have been granted dismissing plaintiff's claim for emotional distress where she testified that as a result of defendant's breach of contract she "became extremely upset . . . nervous and distraught . . . [and] physically ill").

In this case, the separation agreement entered by the parties contained a clause which stated:

> NO MOLESTATION. That each party shall be free from interference and control, direct or indirect, by the other. Neither party shall molest or harass the other, and further, that neither shall attempt by word or act to influence the life of the other, nor compel or attempt to compel the other, to associate, cohabit or dwell with the other for any reason whatsoever.

This agreement is not one concerned with trade, commerce, or profit; the benefits conferred pursuant to this section of the separation agreement are "other than pecuniary"; and the benefits contracted for in this section of the agreement "relate *directly* to matters of dignity, mental concern or solicitude, or the sensibilities of the party to whom the duty is owed" which directly involve "interests and emotions recognized by all as involving great probability of resulting mental anguish if not respected." *See Johnson v. Ruark Obstetrics*, 327 N.C. 283, 301, 395 S.E.2d 85, 96 (quoting *Stanback*, 297 N.C. at 194, 254 S.E.2d at 620), *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). The non-molestation clause of the parties' separation agreement is therefore one of those rare contracts which allows recovery for mental anguish.

Defendant's testimony presented evidence from which the jury could find that plaintiff had breached the non-molestation clause of the separation agreement by repeatedly having lawsuits filed against defendant for the purpose of harassing her and by having defendant arrested for criminal trespass of the marital residence (which charge was later dismissed). Defendant's children were present at the time of her arrest, and "were crying, . . . were very upset . . . [and were] embarrassed." Defendant testified that plaintiff schemed to success-

fully delay her receipt of her share of the proceeds from the subsequent sale of the marital home for approximately two years. Defendant also presented evidence from which the jury could find that plaintiff had stolen her mail for a period of over eighteen months following their separation. An investigator who testified that he had caught plaintiff stealing defendant's mail stated that defendant was "irate and upset" over the situation. Defendant further testified that plaintiff's breach of the non-molestation clause "was upsetting me and tearing the kids up." Defendant testified that the effect of plaintiff's breach of the non-molestation clause had caused "constant litigation, turmoil and upset since he and I separated." She further testified that "[t]he children have been upset. It's been one day to the next wondering what is he going to pull next, what is he going to do next, what is he going to put us through next and it's been that way for seven years." Defendant testified that plaintiff's breach of the separation agreement had affected her health, and the health of her children, resulting in the hospitalization of one child for acute colitis caused by extreme stress. This evidence is sufficient to show that defendant suffered mental anguish as a result of plaintiff's breach of the non-molestation clause of the parties' separation agreement. Accordingly, the trial court properly denied plaintiff's motion for directed verdict.